**DECISION ISSUED FEBRUARY 20, 2024**
**No. 21-1168**

IN THE

# United States Court of Appeals
# for the Fourth Circuit

SONY MUSIC ENTERTAINMENT, ET AL.,

*Plaintiffs-Appellees*,

v.

COX COMMUNICATIONS, INC. and COXCOM, LLC,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 1:18-cv-950
(The Honorable Liam O'Grady)

**PLAINTIFFS-APPELLEES' PETITION FOR REHEARING
AND REHEARING EN BANC**

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, D.C. 20016
(202) 480-2999
matt@oandzlaw.com

Catherine E. Stetson
Jo-Ann Tamila Sagar
Michael J. West
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

March 5, 2024

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION AND RULES 35(b) AND 40(b) STATEMENT ....................... 1

STATEMENT .................................................................................... 4

REASONS FOR GRANTING REHEARING ........................................... 9

I.    THE COURT SHOULD GRANT PANEL REHEARING BECAUSE THE PANEL OVERLOOKED COX'S WAIVER OF ITS CHALLENGE TO THE UNITARY DAMAGES AWARD ...................................................................... 9

II.    ALTERNATIVELY, THE COURT SHOULD GRANT REHEARING EN BANC BECAUSE THE PANEL DECISION CONFLICTS WITH THIS COURT'S PRECEDENTS ............................................................ 11

CONCLUSION ................................................................................. 16

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Barber v. Whirlpool Corp.*,
  34 F.3d 1268 (4th Cir. 1998) ................................................................. 10

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ................................................................... 4

*F.W. Woolworth Co. v. Contemporary Arts*,
  344 U.S. 228 (1952) .............................................................................. 15

*Project Control Servs., Inc. v. Westinghouse Savannah River Co.*,
  35 F. App'x 359 (4th Cir. 2002) .............................................................. 9

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
  74 F.3d 488 (4th Cir. 1996) .................................................................... 15

*Tire Engineering & Distribution, LLC v. Shandang Linglong
  Rubber Co.*,
  682 F.3d 292 (4th Cir. 2012) ...................................................... 3, 14, 15

*United States v. Boykin*,
  669 F.3d 467 (4th Cir. 2012) .................................................................. 13

*United States v. Draven*,
  77 F.4th 307 (4th Cir. 2023) .................................................................. 15

*United States v. Foote*,
  784 F.3d 931 (4th Cir. 2015) .................................................................. 13

*United States v. Herrera*,
  23 F.3d 74 (4th Cir. 1994) ............................................................. *passim*

*United States v. Hickman*,
  626 F.3d 756 (4th Cir. 2010) .................................................................... 9

*United States v. Lespier*,
  725 F.3d 437 (4th Cir. 2013) ...................................................... 3, 12, 13

## TABLE OF AUTHORITIES—Continued

Page(s)

*Wilkins v. United States*,
598 U.S. 152 (2023) ........................................................... 13

*Wilson v. Lindler*,
8 F.3d 173 (4th Cir. 1993) ............................................. 3, 12

**STATUTES:**

17 U.S.C. § 504(c)(1) ................................................................ 5

17 U.S.C. § 504(c)(2) ................................................................ 6

17 U.S.C. § 512(i)(1)(A) ........................................................... 4

28 U.S.C. § 2254 .................................................................... 13

**RULES:**

Fed. R. App. P. 35(a)(1) .......................................................... 13

Fed. R. App. P. 35(b)(1)(A) ............................................. 3, 4, 13

Loc. R. 40(b)(i) ........................................................................ 2

Loc. R. 40(b)(iii) ..................................................................... 2

**OTHER AUTHORITIES:**

Committee on Pattern Civil Jury Instructions of the Seventh Circuit,
*Federal Civil Jury Instructions Of The Seventh Circuit* (rev. 2017),
*available at* https://perma.cc/C4MQ-85SV .......................... 5

Judicial Council of the United States Eleventh Judicial Circuit,
*Eleventh Circuit Pattern Civil Jury Instructions, Civil Cases* (rev.
2013), *available at* https://perma.cc/U3MZ-SRH7 ............... 5

Ninth Circuit Jury Instructions Committee, *Manual of Model Civil
Jury Instructions* (rev. Aug. 2023), *available at*
https://perma.cc/4LTR-5ZRM ............................................... 5

## INTRODUCTION AND RULES 35(b) AND 40(b) STATEMENT

The panel in this case vacated a jury's damages award despite the defendants' uncontested waiver of their challenge to that award—and without explaining why it was excusing that waiver. The panel's vacatur of the jury award also ignored binding precedent and created an intra-circuit conflict. These errors warrant panel rehearing or rehearing en banc.

Plaintiffs are the world's leading record companies and music publishers. After discovering rampant online piracy of their copyrighted works on high-speed internet service provided by Cox Communications, Inc. and CoxCom, LLC (collectively, "Cox"), Plaintiffs sued Cox for contributory and vicarious copyright infringement for continuing to provide that service to known repeat infringers. Plaintiffs asserted claims for infringement of more than 10,000 copyrighted works. Following trial, the jury found Cox liable for contributory and vicarious copyright infringement, found that the infringement was willful, and awarded Plaintiffs $1 billion in statutory damages.

On appeal, Cox challenged the verdict and damages award with a barrage of arguments—including many that had been waived or forfeited below. One of the waived arguments that Cox pressed on appeal was a challenge to the unitary damages award. Cox's proposed jury instructions and verdict form—which the District Court adopted—instructed the jury to award a unitary per-work damage amount if it

1

concluded "that Cox contributorily *or* vicariously infringed any of Plaintiffs' copyrighted works." JA229 (emphasis added).

As Plaintiffs explained in their responsive brief, Cox's challenge to a unitary damages award *that Cox itself requested* is barred under this Court's invited-error doctrine. When the District Court is asked to "take a step in a case" and "complie[s] with such request," the appellant cannot later challenge that decision. *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (per curiam) (citation omitted).

The panel nonetheless vacated the damages award, concluding that the award could not stand after the panel's reversal on vicarious liability. It did not address or explain Cox's waiver.

The panel's vacatur of the damages award accordingly should be revisited, either by the panel or by the full Court. The panel decision appears to have overlooked Cox's waiver of its challenge to the award, which is doubtless "[a] material factual or legal matter." Loc. R. 40(b)(i). Had this Court considered Cox's waiver, it should have affirmed the award. And to the extent the panel *sub silentio* excused Cox's waiver, that would conflict with this Court's precedents. *See* Loc. R. 40(b)(iii). Cox made a choice in the District Court. The panel should hold Cox to the consequences of that choice. Panel rehearing is warranted.

Alternatively, the Court should grant rehearing en banc, for two reasons. First, if the panel indeed silently excused Cox's waiver, that would be a significant reversal

of this Court's invited-error doctrine. As far as counsel is aware, this Court has never before excused an invited error. *See Wilson v. Lindler*, 8 F.3d 173, 175 (4th Cir. 1993) (en banc). Indeed, this Court has never even suggested that *any* exception exists to the invited-error doctrine in circumstances where a sophisticated defendant in a civil case makes a considered strategic choice. *See United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013). The panel's excusal of Cox's waiver thus conflicts with this Court's invited-error precedents, and "consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions." Fed. R. App. P. 35(b)(1)(A).

Second, the panel's vacatur of the damages award also conflicts with this Court's decision in *Tire Engineering & Distribution, LLC v. Shandang Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012). There, this Court held that a general damages award predicated on several theories of liability need not be vacated if one of those theories is reversed or dismissed postverdict where "the claims … are predicated on the same conduct, and the maximum recovery for each claim is the 'same.'" *Id.* at 314 (citation omitted). Here, as the panel recognized, "[t]he vicarious and contributory infringement claims were predicated on the same conduct and the maximum damages for each is identical." Add. 24. And yet the panel vacated the award. This conflict is clear and incontrovertible. For this reason, as well,

3

"consideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions."  Fed. R. App. P. 35(b)(1)(A).

## STATEMENT

A.   Cox has been facilitating its subscribers' infringement for years, flagrantly, at high volume, and with a vocal disregard for federal copyright protections.  Under the Digital Millennium Copyright Act (DMCA), internet service providers typically are protected against copyright-infringement liability if they meet statutory requirements, including that they have "adopted and reasonably implemented … a policy that provides for the termination in appropriate circumstances of subscribers … who are repeat infringers."    17 U.S.C. § 512(i)(1)(A).  This Court concluded in a 2018 decision, however, that Cox could not seek cover in the DMCA's safe harbor because of its woefully inadequate policies.  *See BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 303 (4th Cir. 2018) (observing that Cox "made every effort to avoid reasonably implementing" its repeat-infringer policy); *id.* at 299-300 (describing Cox's practices).  This Court's prior ruling meant that the DMCA's safe harbor was unavailable to Cox when Plaintiffs subsequently sued the company for contributory and vicarious infringement of over 10,000 of Plaintiffs' copyrighted sound recordings and musical compositions.  *See* Add. 5-6; JA212-215; JA822.  Plaintiffs sought statutory damages.  JA215.

Following cross-motions for summary judgment, the case proceeded to trial.
When the time came for the parties to submit their preferred jury instructions and
form of verdict, Cox submitted to the District Court proposed instructions and a
verdict form specifying a unitary per-work damage award that did not distinguish
between Plaintiffs' theories of relief.[1]  Cox's proposed instruction 32 read:  "If you
find that Cox contributorily *or* vicariously infringed any of Plaintiffs' copyrighted
works, then Plaintiffs are entitled to *an* award."  JA229 (emphasis added).  Cox's

---

[1] This is consistent with the Copyright Act of 1976.  The Act allows for "*an* award
of statutory damages for all infringements involved in the action"—with no
differentiation between direct infringement, vicarious infringement, or contributory
infringement.  17 U.S.C. § 504(c)(1) (emphasis added).  A unitary damages award
is thus a common instruction in copyright cases.  *See* Ninth Circuit Jury Instructions
Committee, *Manual of Model Civil Jury Instructions* 17.35 (rev. Aug. 2023),
*available at* https://perma.cc/4LTR-5ZRM (setting forth a unitary damage award for
"copyright infringement"); Committee on Pattern Civil Jury Instructions of the
Seventh Circuit, *Federal Civil Jury Instructions Of The Seventh Circuit* 353 (rev.
2017), *available at* https://perma.cc/C4MQ-85SV (similar); Judicial Council of the
United States Eleventh Judicial Circuit, *Eleventh Circuit Pattern Civil Jury
Instructions, Civil Cases* 9.32 (rev. 2013), *available at* https://perma.cc/U3MZ-
SRH7 (similar).  It likewise appears to be Cox's standard request in copyright cases.
*See* Proposed Jury Instructions at 32, ECF No. 739, *BMG Rts. Mgmt. v. Cox Enters.,
Inc.*, No. 1:14-cv-01611-LO-JFA (E.D. Va. Dec. 14, 2015) (in case alleging
contributory infringement and vicarious liability, generally instructing the jury that
"[i]f you find Cox liable for infringement of BMG's copyrighted works, you must
then decide the amount of damages that Cox owes to BMG for this infringement");
Proposed Verdict Form at 4, ECF No. 741, *BMG Rts. Mgmt. v. Cox Enters., Inc.*,
No. 1:14-cv-01611-LO-JFA (E.D. Va. Dec. 14, 2015) ("If you find that Cox is liable
for infringement, what is the total amount of damages you award to BMG?").

proposed verdict form read: "What amount of statutory damages do you award for each work contributorily *or* vicariously infringed?" JA258 (emphasis added).

The District Court approved Cox's proposals. The court instructed the jury that, "[i]f you find that Cox is liable for contributory infringement *or* you find Cox is liable for vicarious infringement, then you should consider the amount of money to award the plaintiffs." JA802 (emphasis added); *see also* D. Ct. ECF No. 671 at 28 (Jury Instruction No. 27). The verdict form the jury received was substantively identical to the one Cox proposed. *See* JA822-823.

The jury returned a special verdict finding Cox liable for both contributory and vicarious infringement of Plaintiffs' 10,017 copyrighted works. JA823-824. The jury also found that the infringement was willful, which quintupled the statutory damages cap to $150,000 per work infringed. *Id.*; 17 U.S.C. § 504(c)(2). The jury awarded Plaintiffs statutory damages of $99,830.29 for each infringed work, for a total damages award of $1 billion. JA823. This award is well within the guidelines for willful infringement; it is roughly $500 million shy of the statutory maximum.

Post-trial, Cox sought "to reduce the number of works—and with it, damages—to account for compilations and derivative works," which would have lopped about $720 million off of the jury's award. Add. 8; *see also* Opening Br. 58. The District Court rejected this argument, concluding that Cox had forfeited the opportunity to challenge the works as duplicative. JA1051-52.

B.    Cox's post-trial motion forecast its appellate strategy: throw some unpreserved issues at the wall, and see if they stick.[2]  Among its array of forfeited arguments was one directed at the jury's damages award.  Cox argued on appeal that reversal on one theory of liability would require vacatur of the entire damages award "because the jury awarded a global damages figure without distinguishing between claims."  Opening Br. 23-24.  But as Plaintiffs pointed out in their responsive brief (at 39-40), Cox had *proposed* instructing the jury to award a global damages figure if it found Cox liable for contributory *or* vicarious infringement.  Nowhere below, either during or after trial, had Cox suggested that the jury was required to distinguish *between* infringement theories when awarding statutory damages.  *See* D. Ct. ECF No. 682 at 10 (Cox Mem. in Support of Renewed JMOL Mot.) (arguing only that "Plaintiffs are … entitled to only one award of statutory damages for each sound recording and the composition from which it derives").

Cox had nothing to say about its waiver on reply.

---

[2] *See* Opening Br. 39-40 (arguing for the first time on appeal that notice of past acts is insufficient evidence of knowledge); *id.* at 21 (arguing for the first time on appeal that the jury's vicarious-liability judgment should be vacated because Cox lacked the ability to supervise or control its subscribers); *id.* at 54-56 (arguing for the first time on appeal that the District Court's instruction that Plaintiffs had established Cox's knowledge "foreordained" the entire verdict); *see also id.* at 58-74 (arguing, as it had only after trial, that the jury erroneously based its damages award on an inflated number of copyrighted works).

C. The panel heard oral argument on March 9, 2022, and issued its decision on February 20, 2024. *See* Add. 3. In relevant part, the panel affirmed the contributory-infringement verdict, reversed the vicarious-infringement verdict, vacated the damages award, and remanded for a new trial on damages. *See id.* at 4.

In affirming the jury's contributory-infringement verdict, the panel upheld the District Court's conclusion that Plaintiffs had proven Cox's knowledge as a matter of law. As the panel explained, Cox had forfeited any argument to the contrary. *See id.* at 18-20. The panel also held that Cox had forfeited its attempt to exclude certain works from the damages award as either derivative or part of compilations. *See id.* at 30 (rejecting "Cox's efforts to supplement the record after trial"). As for vicarious infringement, the panel held that Plaintiffs had failed "to show that Cox profited from its subscribers' infringing download and distribution of Plaintiffs' copyrighted songs." *Id.* at 13.[3]

The panel then concluded that its affirmance on one theory of liability and its reversal on another "warrants vacatur of the damages award and remand for a new trial on damages." *Id.* at 24. The panel recognized that "the vicarious and contributory infringement claims were predicated on the same conduct and the maximum damages for each is identical." *Id.* But it professed to "lack sufficient

---

[3] Plaintiffs disagree with the panel's vicarious-infringement holding, but are limiting this rehearing petition to the damages issue.

confidence that the jury's vicarious liability verdict here did not materially influence its statutory damages award." *Id.* The panel did not address Cox's invitation of error.

## REASONS FOR GRANTING REHEARING

I. **THE COURT SHOULD GRANT PANEL REHEARING BECAUSE THE PANEL OVERLOOKED COX'S WAIVER OF ITS CHALLENGE TO THE UNITARY DAMAGES AWARD.**

"Under ordinary circumstances, this court will not consider alleged errors that were invited by the appellant." *United States v. Hickman*, 626 F.3d 756, 772 (4th Cir. 2010). When the District Court is asked by a party to "take a step in a case" and "complie[s] with such request," that party cannot later challenge that decision. *Herrera*, 23 F.3d at 75 (citation omitted). A defendant is thus "bar[red]" from challenging on appeal a jury instruction the defendant itself requested. *Id.* at 75-76; *see also, e.g.*, *Project Control Servs., Inc. v. Westinghouse Savannah River Co.*, 35 F. App'x 359, 365 (4th Cir. 2002) (refusing to review alleged "inconsistent verdict" in civil case under the invited-error doctrine). This Court has not recognized any exception to this rule. *See infra* p. 12.

The invited-error doctrine applies with full force here. On appeal, Cox effectively argued that the jury erred in "award[ing] a 'global figure without distinguishing the amount attributable to each claim.'" Opening Br. 57 (quoting

*Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1278 (4th Cir. 1998)).[4]  But the jury awarded a "global figure" because *that is exactly what Cox asked the jury to do*.  Cox proposed that the jury be instructed that, "[i]f you find that Cox contributorily *or* vicariously infringed any of Plaintiffs' copyrighted works, then Plaintiffs are entitled to an award."  JA229 (emphasis added).  And Cox submitted a verdict form asking the jury to identify *one* "amount of statutory damages … for each work contributorily *or* vicariously infringed."  JA258 (emphasis added).  The invited-error doctrine bars Cox's attempt to walk back that decision on appeal.

Plaintiffs explained in their responsive brief that "Cox waived this argument." Resp. Br. 39.  As Plaintiffs explained, Cox proposed the unitary award, to be rendered on a finding of "contributory *or* vicarious infringement," in its own instructions and verdict form, and accordingly was barred by the invited-error doctrine from arguing that the award should be reduced if one ground for statutory damages was taken away.  *Id.* at 39-40 (citing *Herrera*, 23 F.3d at 75-76).  Cox offered no response to that observation in its reply; indeed, Cox maintained that it was "not challenging the jury instructions."  Reply Br. 23.

---

[4] In an apparent bid to dance around its waiver, Cox phrased this challenge in the passive voice, contending merely that "a new trial is necessary on the damages issue."  Opening Br. 57 (quotation marks omitted).

The panel, however, overlooked Cox's waiver without addressing the invited-error doctrine at all. It instead excused Cox's waiver—without acknowledging that it was doing so—and vacated the damages award. *See* Add. 24-25.

This error warrants rehearing. Cox's waiver is clearly material. Under the invited-error doctrine, this Court cannot consider Cox's belated argument that reversal of one theory of liability requires vacatur of the damages award—and thus cannot vacate the award on that ground. Like the other arguments Cox waived or forfeited below, the damages award is a direct consequence of Cox's own litigation choices. And to the extent the panel excused Cox's waiver without acknowledging as much, that would appear to mark the first time this Court has done so. Yet the panel did not even acknowledge that it was breaking with this Court's precedents, much less offer an explanation that could guide future litigants.

The panel should accordingly order rehearing and revise its opinion to reflect Cox's waiver of its challenge to the global nature of the damages award. And it should then affirm, rather than vacate, the award.

## II. ALTERNATIVELY, THE COURT SHOULD GRANT REHEARING EN BANC BECAUSE THE PANEL DECISION CONFLICTS WITH THIS COURT'S PRECEDENTS.

This Court should alternatively grant rehearing en banc because the panel decision conflicts—in two ways—with this Court's precedents.

A.  "[N]o exception to the invited error doctrine has ever been adopted by this circuit."  *Wilson*, 8 F.3d at 175.  At most, this Court has "acknowledged a potential exception to the invited error doctrine 'when it is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice.'"  *Lespier*, 725 F.3d at 450 (quoting *Herrera*, 23 F.3d at 76).  This exception remains only hypothetical in this Circuit, however.  This Court appears never to have applied it to excuse a waiver.

The panel's *sub silentio* excusal of Cox's waiver cannot be reconciled with these prior decisions.  The panel opinion marks the first time this Court has excused an invited error.  This boundary-breaking holding is all the more notable because it is unsupported by any reasoning:  The panel did not explain why excusing Cox's waiver is "necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice."  *Herrera*, 23 F.3d at 76 (citation omitted).

In excusing Cox's waiver, the panel appears to have unintentionally injected confusion into previously uniform circuit law.  The fact pattern here presents a textbook example of a strategic decision triggering the invited-error doctrine: a highly sophisticated defendant in a civil case proposed a particular jury instruction and verdict form that the District Court then adopted.  If waiver can be excused under these circumstances, it is difficult to envision a waiver that would not be excused.  Nor could the hypothetical "miscarriage of justice" exception to invited error possibly be satisfied here; the considered and consistent strategic choices of a

counseled party in a civil case cannot be said to give rise to a "miscarriage of justice." *See supra* p. 5 n.1 (explaining that Cox requested similar unitary damages instructions and form of verdict in *BMG*); *Lespier*, 725 F.3d at 450 (explaining that a decision made "as a matter of a sound trial strategy" cannot give rise to a miscarriage of justice (citation omitted)).[5]

This Court's intervention therefore is needed to restore uniformity to this Court's decisions. *See* Fed. R. App. P. 35(a)(1), (b)(1)(A). As a species of waiver, the invited-error doctrine "'promote[s] the orderly progress of litigation' within our adversarial system." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (citation omitted). The doctrine "ensure[s] efficiency," *id.* at 158, by preventing endless rounds of appeals and remands. And it ensures "fairness," *id.*, by preventing a defendant from taking advantage of its own strategic missteps. If some unspoken lesser exception to the invited-error doctrine exists in this Circuit, it should be

---

[5] *See also Herrera*, 23 F.3d at 77 (Hall, J., dissenting) (contending that a miscarriage of justice existed because the invited error in that case resulted in the conviction of an innocent person); *United States v. Foote*, 784 F.3d 931, 940 (4th Cir. 2015) (explaining that in the 28 U.S.C. § 2254 context, "miscarriage of justice" refers to the conviction of an innocent person); *United States v. Boykin*, 669 F.3d 467, 472 (4th Cir. 2012) (finding plain error and reversing, in part, because "allow[ing] … a severe sentence enhancement to be applied inconsistently with the law" would be a "miscarriage of justice").

announced in a reasoned opinion by this Court sitting en banc—not by a panel, and not by implication.

B.  This Court should also grant rehearing en banc because the panel decision conflicts with this Court's decision in *Tire Engineering*.

In *Tire Engineering*, this Court adopted a "harmless error gloss" on the general rule that a general damages award should be vacated when it rests on multiple legal theories, one of which is later overturned.  682 F.3d at 314.  As the Court explained, a general verdict awarding a global damages amount may stand despite the dismissal or vacatur of one ground for liability where "the claims … are predicated on the same conduct, and the maximum recovery for each claim is the same." *Id.* (quotation marks omitted).

The panel decision cannot be reconciled with *Tire Engineering*.  The panel expressly acknowledged that Plaintiffs' vicarious-infringement and contributory-infringement claims "were predicated on the same conduct and the maximum damages for each is identical."  Add. 24.  Under *Tire Engineering*, that should have been the end of the matter.  The panel nonetheless vacated the award on the ground that, without the finding that Cox "*directly* profit[ed] from its subscribers' infringement," the jury's assessment "*may* be different." *Id.* at 25 (emphases added).  But in keeping with the unitary nature of a statutory copyright award arising from "the same conduct," under the statute and the standard copyright damages instruction

14

Cox sought here, *see supra* p. 5 & n.1, a jury may generally consider "[t]he profits … earned because of the infringement" under *either* form of liability.  JA803; *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) (statutory damages available "[e]ven for uninjurious and unprofitable invasions of copyright"); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (rejecting argument that "the statutory damages must bear some reasonable relationship to the amount of actual damages" and endorsing instruction that directed consideration of several punitive factors, such as the defendant's "history of copyright infringement" and "any evidence that the defendants are apparently impervious to either deterrence or rehabilitation").  The panel did not explain how its conclusion coheres with *Tire Engineering*.

It is "well-settled … that one panel cannot overrule another."  *United States v. Draven*, 77 F.4th 307, 316 (4th Cir. 2023) (quotation marks omitted).  This Court's fractured holdings on this important issue will create needless confusion for future panels assessing a general damages award.  This Court should grant rehearing en banc and reaffirm *Tire Engineering*'s holding that a general damages award may be affirmed upon vacatur of one ground for liability where "the claims … are predicated on the same conduct, and the maximum recovery for each claim is the same."  682 F.3d at 314 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the panel should grant rehearing.  Alternatively,

the Court should grant rehearing en banc.

Respectfully submitted,

March 5, 2024

/s/ Catherine E. Stetson
Catherine E. Stetson

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, D.C. 20016
(202) 480-2999
matt@oandzlaw.com

Jo-Ann Tamila Sagar
Michael J. West
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Plaintiffs-Appellees*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** __21-1168__    **Caption:** Sony Music Entertainment v. Cox Communications, Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ____3,661____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14 point Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Catherine E. Stetson _____

Party Name Sony Music Entertainment et al. _____

Dated: 3/5/2024 _____

**Addendum**

# TABLE OF CONTENTS

Page

Panel Opinion..................................................................................... Add. 1

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-1168**

---

SONY MUSIC ENTERTAINMENT; ARISTA MUSIC; ARISTA RECORDS, LLC; LAFACE RECORDS LLC; PROVIDENT LABEL GROUP, LLC; SONY MUSIC ENTERTAINMENT US LATIN LLC; VOLCANO ENTERTAINMENT III, LLC; ZOMBA RECORDINGS LLC; SONY/ATV MUSIC PUBLISHING LLC; EMI AI GALLICO MUSIC CORP.; EMI ALGEE MUSIC CORP.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC INC.; COLGEMS-EMI MUSIC INC.; EMI CONSORTIUM MUSIC PUBLISHING INC., d/b/a EMI Full Keel Music; EMI CONSORTIUM SONGS, INC., d/b/a EMI Longitude Music; EMI FEIST CATALOG INC.; EMI MILLER CATALOG INC.; EMI MILLS MUSIC, INC.; EMI UNART CATALOG INC.; EMI U CATALOG INC.; JOBETE MUSIC COMPANY, INCORPORATED; STONE AGATE MUSIC; SCREEN GEMS-EMI MUSIC, INCORPORATED; STONE DIAMOND MUSIC CORP.; ATLANTIC RECORDING CORPORATION; BAD BOYS RECORDS LLC; ELEKTRA ENTERTAINMENT GROUP, INCORPORATED; FUELED BY RAMEN LLC; ROADRUNNER RECORDS, INC.; WARNER-TAMERLANE PUBLISHING CORPORATION; WB MUSIC CORPORATION; UNICHAPPELL MUSIC, INCORPORATED; RIGHTSONG MUSIC INC.; COTILLION MUSIC, INCORPORATED; INTERSONG U.S.A., INC.; UMG RECORDINGS, INCORPORATED; CAPITOL RECORDS, LLC; UNIVERSAL MUSIC CORPORATION; UNIVERSAL MUSIC-MGB NA LLC; UNIVERSAL MUSIC PUBLISHING INC.; UNIVERSAL MUSIC PUBLISHING AB; UNIVERSAL PUBLISHING LIMITED; UNIVERSAL MUSIC PUBLISHING MGB LIMITED; UNIVERSAL MUSIC - Z TUNES LLC; UNIVERSAL/ISLAND MUSIC LIMITED; UNIVERSAL/MCA MUSIC PUBLISHING PTY. LIMITED; POLYGRAM PUBLISHING, INC.; SONGS OF UNIVERSAL, INC.; WARNER RECORDS, INC., f/k/a W.B.M. Music Corp.; WARNER CHAPPELL MUSIC, INC., f/k/a Warner/Chappell Music, Inc.; W.C.M. MUSIC CORP., f/k/a W.B.M. Music Corp.,

Plaintiffs – Appellees,

and

Add. 1

NONESUCH RECORDS INC.; WARNER BROS. RECORDS, INC.; WARNER/CHAPPELL MUSIC, INC.; W.B.M. MUSIC CORP.; UNIVERSAL - POLYGRAM INTERNATIONAL TUNES, INC.; UNIVERSAL - SONGS OF POLYGRAM INTERNATIONAL, INC.; UNIVERSAL POLYGRAM INTERNATIONAL PUBLISHING, INC.; MUSIC CORPORATION OF AMERICA, INC., d/b/a Universal Music Corporation; RONDOR MUSIC INTERNATIONAL,

       Plaintiffs,

    v.

COX COMMUNICATIONS, INCORPORATED; COXCOM, LLC,

       Defendants – Appellants.

-------------------------

INTERNET ASSOCIATION; ELECTRONIC FRONTIER FOUNDATION; CENTER FOR DEMOCRACY AND TECHNOLOGY; AMERICAN LIBRARY ASSOCIATION; ASSOCIATION OF COLLEGE AND RESEARCH LIBRARIES; ASSOCIATION OF RESEARCH LIBRARIES; PUBLIC KNOWLEDGE; NTCA THE RURAL BROADBAND ASSOCIATION; CTIA - THE WIRELESS ASSOCIATION; USTELECOM THE BROADBAND ASSOCIATION; INTERNET COMMERCE COALITION; INTELLECTUAL PROPERTY LAW PROFESSORS,

       Amici Supporting Appellant,

    and

NATIONAL MUSIC PUBLISHERS' ASSOCIATION; NASHVILLE SONGWRITERS ASSOCIATION INTERNATIONAL; SONGWRITERS OF NORTH AMERICA; COPYRIGHT ALLIANCE,

       Amici Supporting Appellee.

-------------------------

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:18-cv-00950-LO-JFA)

-------------------------

2

**Add. 2**

Argued:  March 9, 2022                    Decided:  February 20, 2024

---

Before HARRIS and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed in part, reversed in part, vacated in part, and remanded by published opinion. Judge Rushing wrote the opinion, in which Judge Harris and Senior Judge Floyd joined.

---

**ARGUED:**  E. Joshua Rosenkranz, ORRICK, HERRINGTON & SUTCLIFFE LLP, New York, New York, for Appellants.  Catherine Emily Stetson, HOGAN LOVELLS US LLP, Washington, D.C., for Appellees.  **ON BRIEF:**  Michael S. Elkin, Jennifer A. Golinveaux, Geoffrey P. Eaton, WINSTON & STRAWN LLP, New York, New York; Mark S. Davies, Sheila A. Baynes, Washington, D.C., Christopher J. Cariello, Rachel G. Shalev, Alexandra Bursak, ORRICK, HERRINGTON & SUTCLIFFE LLP, New York, New York, for Appellants.  Matthew J. Oppenheim, Scott A. Zebrak, Jeffrey M. Gould, OPPENHEIM + ZEBRAK, LLP, Washington, D.C.; Jo-Ann Tamila Sagar, Patrick C. Valencia, HOGAN LOVELLS US LLP, Washington, D.C., for Appellees.  Joseph C. Gratz, Samuel J. Zeitlin, DURIE TANGRI LLP, San Francisco, California, for Amicus Internet Association. Mitchell L. Stoltz, Corynne McSherry, ELECTRONIC FRONTIER FOUNDATION, San Francisco, California; Erik Stallman, Juliana DeVries, Samuelson Law, Technology & Public Policy Clinic, UC BERKELEY SCHOOL OF LAW, Berkeley, California, for Amici Electronic Frontier Foundation, Center for Democracy and Technology, American Library Association, Association of College and Research Libraries, Association of Research Libraries, and Public Knowledge.  David E. Weslow, Megan L. Brown, Ari S. Meltzer, Kevin G. Rupy, Adrienne J. Kosak, WILEY REIN LLP, Washington, D.C., for Amici NTCA – The Rural Broadband Association, CTIA – The Wireless Association, and USTelecom – The Broadband Association.  Andrew L. Deutsch, DLA PIPER LLP (US), Los Angeles, California, for Amicus Internet Commerce Coalition.  Phillip R. Malone, Juelsgaard Intellectual Property and Innovation Clinic, Mills Legal Clinic, STANFORD LAW SCHOOL, Stanford, California, for Amici Intellectual Property Law Professors. Danielle M. Aguirre, Kerry M. Mustico, Christopher A. Bates, NATIONAL MUSIC PUBLISHERS' ASSOCIATION, Washington, D.C.; Ruthanne M. Deutsch, Hyland Hunt, Alexandra Mansbach, DEUTSCH HUNT PLLC, Washington, D.C., for Amici National Music Publishers' Association, Nashville Songwriters Association International, and Songwriters of North America.  Nancy Wolff, Sara Gates, COWAN DEBAETS ABRAHAMS & SHEPPARD LLP, New York, New York, for Amicus The Copyright Alliance.

---

3

**Add. 3**

RUSHING, Circuit Judge:

Defendant Cox Communications sells internet, telephone, and cable television service to 6 million homes and businesses across the United States. Plaintiffs—Sony Music Entertainment and numerous other record companies and music publishers—own some of the most popular copyrighted musical works of our time. Some users of Cox's internet service infringed Plaintiffs' copyrights by downloading or distributing songs over the internet without permission. Rather than sue those individuals, Plaintiffs sued Cox, seeking to hold it responsible for its customers' copyright infringement.

Federal law protects internet service providers from monetary liability for copyright infringement committed by users of their networks, but only if those service providers reasonably implement a policy to terminate repeat infringers in appropriate circumstances. In a prior case, our Court held that Cox had failed to reasonably implement an anti-piracy program and therefore did not qualify for the statutory safe harbor.

This case proceeded to trial on two theories of secondary liability: vicarious and contributory copyright infringement. The jury found Cox liable for both willful contributory and vicarious infringement of 10,017 copyrighted works owned by Plaintiffs and awarded $1 billion in statutory damages. Cox appealed.

We affirm the jury's finding of willful contributory infringement. But we reverse the vicarious liability verdict and remand for a new trial on damages because Cox did not profit from its subscribers' acts of infringement, a legal prerequisite for vicarious liability.

I.

Copyright owners possess the "exclusive rights" to "reproduce," "distribute," "perform," "display," or "prepare derivative works based upon" their copyrighted works, subject to limitations not relevant here.  17 U.S.C. § 106.  Anyone who violates any of these exclusive rights of the copyright owner is "an infringer of the copyright."  *Id.* § 501(a).  A copyright owner may "institute an action" against an infringer, *id.* § 501(b), and receive either statutory damages, *id.* § 504(a)(2), or actual damages plus the infringer's profits, *id.* § 504(a)(1).  Although the Copyright Act "does not expressly render anyone liable for infringement committed by another," the Supreme Court has long held that vicarious and contributory liability for copyright infringement rest on firm legal footing.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434–435 (1984).

Congress recognized that internet service providers may get caught in the crossfire when infringers use the internet to reproduce or distribute copyrighted works, so it created a safe harbor defense in the Digital Millennium Copyright Act (DMCA).  *See* 17 U.S.C. § 512.  To be eligible for the defense, an internet service provider must have "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers."  *Id.* § 512(i)(1)(A).  This Court previously held that Cox did not qualify for the safe harbor because its repeat infringer policy as implemented was inadequate under the DMCA.  *See BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 301–305 (4th Cir. 2018).  The claim period in this case coincides with the

5

**Add. 5**

period during which Cox was ineligible for the safe harbor, so Cox faces the secondary liability claims here without that protection.[1]

This lawsuit began when Sony and other owners of copyrighted musical works (collectively, Sony or Plaintiffs) sued Cox for infringement committed by subscribers to Cox's internet service from 2013 to 2014.  During the claim period, Cox provided internet service to residential and commercial subscribers, charging different flat fees for different download speeds according to a tiered pricing plan.

Plaintiffs are members of the Recording Industry Association of America (RIAA), which hired the anti-piracy company MarkMonitor to catch infringements of its members' copyrights on peer-to-peer networks using file-sharing protocols like BitTorrent and others.  *See BMG*, 881 F.3d at 298–299 (explaining peer-to-peer file sharing and BitTorrent).  When MarkMonitor discovered an internet user downloading or distributing a copyrighted music file, it notified the user's internet service provider.  Only the service provider can match an alleged infringer's internet protocol address to its owner's identity.  When Cox received infringement notices from MarkMonitor, Cox's automated system sent notices to the infringing subscribers.  The notice Cox sent varied by how far along the subscriber was in Cox's thirteen-strike policy, ranging from an email warning to a temporary suspension.  *See BMG*, 881 F.3d at 299 (describing the thirteen-strike policy).

---

[1] The DMCA safe harbor defense is not exclusive, so Cox remains "entitled to all other arguments under the  law" in its defense.  *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 552 (4th Cir. 2004); *see* 17 U.S.C. § 512(l).

6

**Add. 6**

Over time, Cox developed various methods to stem the tidal wave of infringement notices it was receiving and mitigate the consequences for its subscribers. It capped the number of notices it would accept from RIAA, eventually holding it at 600 notices per day. It took no action on the first DMCA complaint for each subscriber, limited the number of account suspensions per day, and restarted the strike count for subscribers once it terminated and reinstated them. MarkMonitor sent Cox 163,148 infringement notices during the claim period. Over that time, Cox terminated 32 subscribers for violation of its Acceptable Use Policy, which prohibits copyright infringement among other things. By comparison, it terminated over 600,000 subscribers for nonpayment over that same time. Frustrated with Cox's lackluster response to the notices, Sony sued Cox for vicarious and contributory copyright infringement.

After discovery, Sony and Cox cross-moved for summary judgment. Two of the district court's rulings at that stage are relevant for this appeal. First, the district court concluded that the infringement notices MarkMonitor sent to Cox proved Cox's knowledge of infringement as a matter of law. That knowledge established one element of contributory liability. Second, the district court denied Cox's motion to reduce the number of copyrighted works in suit. Cox argued that, for the purpose of statutory damages, all songs included on a single album constitute one work, and a sound recording and the music composition it embodies likewise count as a single work. *See* 17 U.S.C. § 504(c)(1) (authorizing statutory damages for infringement "with respect to any one work" and explaining that "all the parts of a compilation or derivative work constitute one work"). The district court found that issues of material fact remained and so this claim should "be

**Add. 7**

resolved at trial." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 236 (E.D. Va. 2019).

The parties presented their case to the jury over the course of twelve days. Plaintiffs limited their case to Cox subscribers who received three or more infringement notices. In the end, the jury found Cox liable for vicarious and contributory infringement of all 10,017 copyrighted works alleged. The jury also found that Cox's infringement was willful, which increased the available maximum statutory damages to $150,000 per work. *See* 17 U.S.C. § 504(c)(1)–(2). The jury awarded Sony $99,830.29 per infringed work, for a total of $1 billion in statutory damages.

After the verdict, Cox renewed its motion for judgment as a matter of law, which the district court ultimately denied in full. Regarding liability, the district court rejected Cox's arguments that the evidence did not prove vicarious or contributory infringement. Cox also sought again to reduce the number of works—and with it, damages—to account for compilations and derivative works. The district court rejected Cox's request as to compilations but invited Cox to submit a calculation of the derivative works that were allegedly double counted. After receiving Cox's submission, however, the district court denied any reduction in the number of works, reasoning that Cox's posttrial arguments required factfinding within the province of the jury and that Cox had failed to present evidence sufficient to enable the jury to make the adjustments it requested.

Now on appeal, Cox raises numerous questions of law concerning the scope of secondary liability for copyright infringement and what constitutes a compilation or

derivative work in the internet age.  Ultimately, we find we must answer only some of these novel questions to resolve this appeal.

## II.

We begin with Cox's contention that the district court erred in denying it judgment as a matter of law on Sony's vicarious infringement claim.  We review that ruling de novo. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 391 (4th Cir. 2014).  Judgment as a matter of law is proper if, viewing all evidence and reasonable inferences in the light most favorable to the nonmoving party, "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party." Fed. R. Civ. P. 50(a)(1).  A district court should grant judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Russell*, 763 F.3d at 391 (internal quotation marks omitted).

A defendant may be held vicariously liable for a third party's copyright infringement if the defendant "[1] profits directly from the infringement and [2] has a right and ability to supervise the direct infringer."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005); *see also CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("[A] defendant who 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities' is [vicariously] liable." (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971))).  Cox contests both elements on appeal.  Because we conclude Sony failed, as a matter of law, to prove that Cox profits directly from its

subscribers' copyright infringement, we do not reach the additional question of Cox's right and ability to supervise its subscribers.

Cox argues that it does not profit directly from its subscribers' infringement because "[a]ll subscribers pay Cox a flat monthly fee for their internet access package no matter what they do online." Opening Br. 27. Whether a subscriber uses her internet access for lawful or unlawful purposes, Cox receives the same monthly fee, and a subscriber's decision to download or distribute a copyrighted song without permission does not benefit Cox. The district court rejected this argument, concluding that Sony had proven Cox's direct financial interest by showing that Cox repeatedly declined to terminate the accounts of infringing subscribers in order to continue collecting their monthly fees. To understand this issue, some legal background is necessary.

Vicarious liability for copyright infringement is an "outgrowth of the agency principles of respondeat superior." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996); *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001). It extends beyond a strict employer-employee relationship to other settings in which a defendant similarly "'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Costar Grp.*, 373 F.3d at 550 (quoting *Gershwin Pub. Corp.*, 443 F.2d at 1162). So, for example, we have held that a property owner was vicariously liable for its closely related developer's infringing use of copyrighted architectural drawings in a construction project. *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513–514 (4th Cir. 2002). In addition to its control over the project, the property owner had "an obvious and direct financial interest in the

[developer's] infringing activities" because the owner "enjoyed the benefit of any increase in the Project's value resulting from [the developer's] infringement" of the copyrighted drawings. *Id.* at 514. In another example, a company that sold nutritional supplements was vicariously liable for its distributors' infringing use of copyrighted photographs to advertise its products because the company could control the distributors and stood to benefit from increased sales spurred by the infringing advertisements. *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376, 389 (3d Cir. 2016).

The landmark case on vicarious liability for infringing copyrighted musical recordings is *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304 (2d Cir. 1963). There a department store was held accountable for the infringing sale of "bootleg" records by a concessionaire operating in its stores. *Id.* at 307–308. The store retained the ultimate right to supervise the concessionaire and its employees, demonstrating its control over the infringement. And the store received a percentage of every record sale, "whether 'bootleg' or legitimate," giving it "a most definite financial interest" in the infringing sales.[2] *Id.*

Courts have recognized, however, that a defendant may possess a financial interest in a third party's infringement of copyrighted music even absent a strict correlation

---

[2] In an analysis that courts still use today, the *Shapiro* court contrasted two types of relationships: (1) landlords and tenants and (2) dance halls and bands. *Shapiro*, 316 F.2d at 307; *see Sony*, 464 U.S. at 437 n.18 (picking up this comparison); *Leonard*, 834 F.3d at 388–389 (same). A landlord is not vicariously liable for a tenant's copyright infringement, the court explained, because he exercises no supervision over the tenant and charges a fixed rental fee regardless of whether the tenant infringes copyrights in the rented house. *Shapiro*, 316 F.2d at 307. But the dance hall proprietor who hires a band can control the premises, and the band's infringing performances of copyrighted songs "provide the proprietor with a source of customers and enhanced income," exposing him to vicarious liability. *Id.*

between each act of infringement and an added penny of profits. For example, *Fonovisa* concerned the operator of a swap meet who allowed vendors to sell infringing records. The complaint alleged that the operator collected "admission fees, concession stand sales and parking fees"—but no sales commission—"from customers who want[ed] to buy the counterfeit recordings at bargain basement prices." *Fonovisa*, 76 F.3d at 263. These allegations sufficed to state a direct financial benefit to the swap meet operator, the court held, because "the sale of pirated recordings at the . . . swap meet [was] a 'draw' for customers." *Id.* The infringing sales "enhance[d] the attractiveness of the venue to potential customers," giving the swap meet operator a financial interest in the infringement sufficient to state a claim for vicarious liability. *Id.*

Applying these principles to copyright infringement in cyberspace, courts and Congress agree that "'receiving a one-time set-up fee and flat periodic payments for service'" from infringing and noninfringing users alike ordinarily "'would not constitute receiving a financial benefit directly attributable to the infringing activity.'" *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (quoting S. Rep. 105-190, at 44 (1998)). But "'where the value of the service lies in providing access to infringing material,'" those flat fees may constitute a direct financial benefit. *Id.* (quoting S. Rep. 105-190, at 45).

For example, the file-sharing service Napster had a direct financial interest in its users' exploitation of copyrighted music. An increasing volume of pirated music available for download drew more users to register with Napster, and its "future revenue [was] directly dependent upon increases in userbase." *Napster*, 239 F.3d at 1023 (internal quotation marks omitted).

12

By contrast, America Online (AOL) was not vicariously liable for copyright infringement occurring over an online forum to which it provided its subscribers access. Although access to online forums encouraged overall subscription to AOL's services, there was no direct financial benefit from infringement where no evidence indicated "that AOL customers either subscribed because of the available infringing material" or "canceled subscriptions" when the material was no longer available. *Ellison*, 357 F.3d at 1079. Without "evidence that AOL attracted or retained subscriptions because of the infringement or lost subscriptions because of [its] eventual obstruction of the infringement," "no jury could reasonably conclude that AOL received a direct financial benefit from providing access to the infringing material." *Id.*

As these cases illustrate, the crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant. If copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service, that financial benefit may be profit from infringement. *See, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016). But in every case, the financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability. *See Grokster*, 545 U.S. at 930 & n.9; *Nelson-Salabes*, 284 F.3d at 513.

To prove vicarious liability, therefore, Sony had to show that Cox profited from its subscribers' infringing download and distribution of Plaintiffs' copyrighted songs. It did not.

The district court thought it was enough that Cox repeatedly declined to terminate infringing subscribers' internet service in order to continue collecting their monthly fees. Evidence showed that, when deciding whether to terminate a subscriber for repeat infringement, Cox considered the subscriber's monthly payments. *See*, *e.g.*, J.A. 1499 ("This customer will likely fail again, but let's give him one more chan[c]e. [H]e pays 317.63 a month."). To the district court, this demonstrated the requisite connection between the customers' continued infringement and Cox's financial gain.

We disagree. The continued payment of monthly fees for internet service, even by repeat infringers, was not a financial benefit flowing directly from *the copyright infringement itself*. As Cox points out, subscribers paid a flat monthly fee for their internet access no matter what they did online. Indeed, Cox would receive the same monthly fees even if all of its subscribers stopped infringing. Cox's financial interest in retaining subscriptions to its internet service did not give it a financial interest in its subscribers' myriad online activities, whether acts of copyright infringement or any other unlawful acts. An internet service provider would necessarily lose money if it canceled subscriptions, but that demonstrates only that the service provider profits directly from the sale of internet access. Vicarious liability, on the other hand, demands proof that the defendant profits directly from the *acts of infringement* for which it is being held accountable.

Sony responds that, even if we disagree with the district court, the jury heard other evidence of Cox's direct financial interest in its subscribers' copyright infringement. But none of Sony's alternative theories supports vicarious liability here.

14

**Add. 14**

First, Sony contends that the jury could infer from the volume of infringing activity on Cox's network that the ability to infringe was a draw for customers. In support, Sony highlights evidence that roughly 13% of Cox's network traffic was attributable to peer-to-peer activity and over 99% of peer-to-peer usage was infringing. Even if the jury believed Sony's characterization that this was a high volume of infringing activity in general, the evidence falls considerably short of demonstrating that customers were drawn to purchase Cox's internet service, or continued to use that service, because it offered them the ability to infringe Plaintiffs' copyrights. *Cf. Ellison*, 357 F.3d at 1079. Many activities of modern life demand internet service. No one disputes that Cox's subscribers need the internet for countless reasons, whether or not they can infringe. Sony has not identified evidence that any infringing subscribers purchased internet access because it enabled them to infringe copyrighted music. Nor does any evidence suggest that customers chose Cox's internet service, as opposed to a competitor's, because of any knowledge or expectation about Cox's lenient response to infringement.

Second, Sony asserts that "subscribers were willing to pay more for the ability to infringe," but the evidence does not go nearly so far. Response Br. 36. Cox had a tiered pricing structure by which it charged customers higher monthly fees for increased data allowances. According to Sony, peer-to-peer activity is "bandwidth-intensive," "more data usage requires more speed," and Cox advertised its network speeds in relation to how quickly a user could download songs. Response Br. 37. Further, Sony explains, "residential subscribers who were the subject of 20 or more infringement notices from 2012

**Add. 15**

[to] 2014 paid Cox more per month, on average, than residential subscribers who were the subject of only 1 or 2 infringement notices." Response Br. 34.

None of this raises a reasonable inference that any Cox subscriber paid more for faster internet in order to engage in copyright infringement. As Sony's expert testified, other data intensive activities include legally streaming movies, television shows, and music, as well as playing video games. Subscribers may have purchased high speed internet for lawful streaming and downloads or because their households had many internet users; Sony's expert didn't claim to know why any customer purchased a higher tier of service. Sony has not identified any evidence that customers were attracted to Cox's internet service or paid higher monthly fees because of the opportunity to infringe Plaintiffs' copyrights.

At bottom, Sony offered no legally adequate theory to establish the required causal connection between subscribers' copyright infringement and increased revenue to Cox. While Cox profited from the sale of internet service, Sony has not shown that Cox, in any sense, had a financial interest in its subscribers committing infringement. *See Costar Grp.*, 373 F.3d at 550. And it is the infringement itself that must in some fashion profit the defendant for vicarious liability to attach. Accordingly, under the correct legal standard, no reasonable jury could find that Cox received a direct financial benefit from its subscribers' infringement of Plaintiffs' copyrights. We therefore conclude that Cox is not vicariously liable for its subscribers' copyright infringement and reverse the district court's denial of Cox's motion for judgment as a matter of law.

16

**Add. 16**

III.

We turn next to contributory infringement. Under this theory, "'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement, too." *CoStar Grp.*, 373 F.3d at 550 (quoting *Gershwin Pub.*, 443 F.2d at 1162). The district court resolved the question of Cox's knowledge on summary judgment, while the jury found material contribution at trial, so we address Cox's challenge to each element separately.

A.

We review the district court's grant of summary judgment de novo, applying the same standard the district court was required to apply. *See Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Our Court has recently clarified the intent necessary to prove contributory infringement by an internet service provider based on its subscribers' direct infringement. In *BMG Rights Management v. Cox Communications*, we held that intent to cause infringement may be shown by willful blindness—which is not at issue in this appeal—or by "know[ledge] that infringement [was] substantially certain to result from the sale" of internet service to a customer. 881 F.3d at 307. General knowledge of infringement occurring on the defendant's network is not enough; "[s]elling a product with both lawful and unlawful uses suggests an intent to cause infringement only if the seller knows of *specific* instances of infringement." *Id.* at 311. Applying these principles to Cox in that

17

**Add. 17**

case, we held that Cox could not be contributorily liable absent "knowledge that infringement [was] substantially certain to result from Cox's continued provision of Internet access to particular subscribers." *Id.*

As *BMG* suggests, in this scenario, knowledge that particular subscribers are substantially certain to infringe is a predictive question. We reasoned in *BMG* that knowledge of past infringement is relevant to proving this element. *See id.* at 308. Here, Cox produced data purporting to show the effectiveness of each step of its thirteen-strike policy at reducing future infringement, which could also be relevant. And Sony highlights internal emails implying that Cox continued providing internet service to certain habitual infringers despite believing they would infringe again. A jury could consider this and other evidence to determine whether, when Cox continued providing internet service to customers receiving three or more infringement notices, it knew they were substantially certain to infringe Plaintiffs' copyrights by, for example, downloading another song or distributing a song they had previously downloaded.

Cox argues that the district court erred by taking this factual determination away from the jury and deciding as a matter of law that notices of past infringement established Cox's knowledge that subscribers were substantially certain to infringe in the future. Unfortunately, Cox did not make any argument of this ilk to the district court when opposing summary judgment on the knowledge element. Instead, Cox's opposition to Sony's motion for summary judgment on knowledge focused exclusively on the adequacy of the infringement notices from MarkMonitor. Cox argued that the notices lacked information, that the notices were too vague to notify Cox of infringement of specific

18

copyrighted works by specific internet users, and that Sony needed additional evidence beyond the notices to prove that those infringements occurred.

In the district court, all parties (and the court itself) appear to have proceeded on the assumption that knowledge of subscribers' past infringement sufficed to prove this element of contributory liability. Addressing the arguments Cox actually made, the district court concluded that the infringement notices from MarkMonitor were sufficiently detailed to notify Cox of specific instances of infringement.[3] And based on Cox's knowledge of those notices, the court concluded that Sony had established the knowledge element of contributory liability as a matter of law.

Cox did not argue to the district court, as it does now on appeal, that notices of past infringement failed to establish its knowledge that the same subscriber was substantially certain to infringe again. Cox cites certain pages of its memorandum opposing Sony's motion for summary judgment where it claims to have preserved this argument. But no arguable interpretation of those pages or their context reveals any theory like the one Cox advances on appeal. In the district court, Cox contested the sufficiency of the infringement notices to prove Cox's knowledge *of the past infringements alleged therein*. On appeal, Cox argues that its knowledge of past infringements "does not prove Cox *knew ex ante that the same subscriber was 'substantially certain' to infringe again*." Opening Br. 38 (emphasis added). "These are different arguments entirely, and making the one does not

---

[3] To the extent Cox suggests that disputes about the information in particular infringement notices independently warrant vacatur of summary judgment, we agree with the district court that these disputes are immaterial.

19

preserve the other." *Laber v. Harvey*, 438 F.3d 404, 428 n.24 (4th Cir. 2006). Indeed, Cox did not even mention the "substantially certain" standard anywhere in its memorandum opposing summary judgment. *Cf.* Opening Br. 38 (Cox faulting the district court for not mentioning this "requirement" in its opinion).

Because Cox did not press this argument in the district court, it is forfeited for appeal. "Arguments raised in a trial court must be specific and in line with those raised on appeal." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014). "[A]n objection on one ground does not preserve objections based on different grounds." *Id.* (internal quotation marks omitted); *see also*, *e.g.*, *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) ("To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal."); *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 379 (4th Cir. 1995) ("[A] theory not raised at trial cannot be raised on appeal.").

"Absent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009); *see also Agra, Gill & Duffus, Inc. v. Benson*, 920 F.2d 1173, 1176 (4th Cir. 1990) ("We will not accept on appeal theories that were not raised in the district court except under unusual circumstances."). Cox does not contend that any such circumstances exist here, nor does Cox make any effort to show "fundamental error or a denial of fundamental justice." *In re Under Seal*, 749 F.3d at 285 (internal quotation marks omitted); *see id.* at 292 (finding that appellant abandoned any argument for overlooking forfeiture by failing to brief it). Consequently, we decline to consider Cox's new argument on appeal.

B.

Moving to the material contribution element of contributory liability, Cox appeals the district court's denial of its renewed motion for judgment as a matter of law. We review that denial de novo and must affirm if, "viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in the non-moving party's favor." *First Union Com. Corp. v. GATX Cap. Corp.*, 411 F.3d 551, 556 (4th Cir. 2005) (internal quotation marks and brackets omitted); *see* Fed. R. Civ. P. 50(a)(1). We may not weigh evidence or judge the credibility of witnesses. *See First Union Com. Corp.*, 411 F.3d at 556.

The district court declined to disturb the jury's contributory liability verdict because sufficient evidence supported a finding that Cox materially contributed to its subscribers' direct infringement of Plaintiffs' copyrights.[4] As the court explained, Cox's internet service "was indispensable to each instance of [peer-to-peer] infringement on its network." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 464 F. Supp. 3d 795, 816 (E.D. Va. 2020). And, considering the evidence in the light most favorable to Plaintiffs, a reasonable jury could have found that Cox provided that service "with actual knowledge" of infringement occurring "on specific subscribers' accounts," yet "fail[ed] to address" that infringement occurring on its network. *Id.*

Cox makes two principal objections. The first rests on the contention that it cannot be liable for materially contributing to copyright infringement because the internet service

---

[4] The jury instruction asked if Cox "induced, caused, or materially contributed to the infringing activity," J.A. 801, but only material contribution is before us on appeal.

21

**Add. 21**

it provides is capable of substantial lawful use and not designed to promote infringement. We rejected that argument in *BMG*: "In fact, providing a product with 'substantial non-infringing uses' *can* constitute a material contribution to copyright infringement." 881 F.3d at 306. As we explained there, "*Grokster* makes clear that what matters is not simply whether the product has some or even many non-infringing uses, but whether the product is distributed with the *intent* to cause copyright infringement." *Id.* Accordingly, Cox's concern that businesses "would be automatically liable for providing any product or service with knowledge that some small set of customers may use it, in part, to infringe" is misplaced. Opening Br. 45.

Second and similarly, Cox claims its contribution must "amount[] to culpable conduct equivalent to aiding and abetting the infringement," Opening Br. 43 (internal quotation marks and ellipsis omitted), and that "failing to prevent" its subscribers' infringement does not suffice, Opening Br. 46. This argument ignores the evidence before the jury.

It is true that "mere[] . . . failure to take affirmative steps to prevent infringement" does not establish contributory liability "in the absence of other evidence of intent." *Grokster*, 545 U.S. at 939 n.12. But supplying a product with knowledge that the recipient will use it to infringe copyrights is exactly the sort of culpable conduct sufficient for contributory infringement. For example, in *BMG* we reasoned that leasing a VCR to a customer—innocent conduct by itself—can support contributory liability if the lessor knows the customer is substantially certain to use it for copyright infringement. *See BMG*, 881 F.3d at 308. In such a situation, providing the means to infringe *is* culpable pursuant

22

to the common law rule that a person is presumed to intend the substantially certain results of his acts. *See id.* at 307. This accords with principles of aiding and abetting liability in the criminal law. Lending a friend a hammer is innocent conduct; doing so with knowledge that the friend will use it to break into a credit union ATM supports a conviction for aiding and abetting bank larceny. *See United States v. Thompson*, 539 Fed. App. 778, 779 (9th Cir. 2013); *United States v. Thompson*, 728 F.3d 1011, 1013 (9th Cir. 2013).

The evidence at trial, viewed in the light most favorable to Sony, showed more than mere failure to prevent infringement. The jury saw evidence that Cox knew of specific instances of repeat copyright infringement occurring on its network, that Cox traced those instances to specific users, and that Cox chose to continue providing monthly internet access to those users despite believing the online infringement would continue because it wanted to avoid losing revenue. Sony presented extensive evidence about Cox's increasingly liberal policies and procedures for responding to reported infringement on its network, which Sony characterized as ensuring that infringement would recur. And the jury reasonably could have interpreted internal Cox emails and chats as displaying contempt for laws intended to curb online infringement. To be sure, Cox's anti-infringement efforts and its claimed success at deterring repeat infringement are also in the record. But we do not weigh the evidence at this juncture. The evidence was sufficient to support a finding that Cox materially contributed to copyright infringement occurring on its network and that its conduct was culpable. Therefore we may not disturb the jury's verdict finding Cox liable for contributory copyright infringement.

IV.

Having reversed on one theory of liability and affirmed on the other, we now must address the scope of the vacatur and proceedings on remand.  We conclude that reversal of the vicarious infringement verdict warrants vacatur of the damages award and remand for a new trial on damages.  But we see no reason to vacate the contributory infringement verdict, nor will we direct the district court to enter judgment on any part of the now-vacated statutory damages verdict.

A.

When a jury returns a special verdict form finding two bases for liability but a general damages verdict that does "not apportion damages between the claims," reversal of one theory of liability on appeal typically requires "a new trial . . . on the damages issue." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1278 (4th Cir. 1994).  Only "where it is reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it" is vacatur of the general damages award unnecessary.  *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 314 (4th Cir. 2012) (internal quotation marks omitted).

We lack sufficient confidence that the jury's vicarious liability verdict here did not materially influence its statutory damages award.  The $1 billion award was a "global figure" for all infringements in the case.  *Barber*, 34 F.3d at 1278.  Although the vicarious and contributory infringement claims were predicated on the same conduct and the maximum damages for each is identical, the statutory range is wide and the jury's choice within it is highly discretionary and may have been influenced by the vicarious

24

infringement verdict. *See* 17 U.S.C. § 504(c)(1), (2) (authorizing a "just" award between $750 and $150,000 per work for willful infringement). Unlike actual damages, statutory damages are not tethered to concrete figures like lost profits or incurred expenses. To the contrary, the jury was instructed to award an amount it found "fair under the circumstances," taking into consideration factors such as "[t]he profits Cox earned because of the infringement," "[t]he expenses Cox saved because of the infringement," "[t]he circumstances of the infringement," and "the need to punish Cox," among others. J.A. 803. We have reversed the vicarious liability verdict because Cox did not directly profit from its subscribers' infringement. Without that legally erroneous finding, the jury's assessment of at least these damages factors may be different. Given the jury's wide discretion in assessing the appropriate damages and its legally erroneous finding that Cox had a direct financial interest in its subscribers' infringement, we are not "reasonably certain that the jury was not significantly influenced" in its statutory damages award by its finding of vicarious liability. *Tire Eng'g*, 682 F.3d at 314 (internal quotation marks omitted). We therefore vacate the damages award and remand for a new trial on damages.

B.

Cox urges us to vacate not just the damages award but also the contributory liability verdict because, in its view, the two types of secondary liability are intertwined. We don't see much to support Cox's unadorned claim that a wrong conclusion on direct financial interest in subscriber infringement would significantly influence the jury's finding on material contribution to infringement. Accordingly, we decline to vacate the contributory infringement verdict on this ground.

25

C.

Finally, Cox argues that, even if we remand the case for a new trial on damages, we should direct the district court to enter judgment in Cox's favor as to certain copyrighted works that Cox claims cannot be used to calculate statutory damages.  Cox renewed its motion for judgment as a matter of law on this ground after trial, and the district court denied relief.  Even though we have vacated the entire damages determination, we address this issue because if Cox were right, it would be entitled to exclude a number of works from consideration for statutory damages and would not have to prove the status of those works to the jury at retrial.

The Copyright Act authorizes an award of statutory damages within a certain dollar range "for all infringements involved in the action, with respect to any one work" and specifies that, "[f]or the purposes of this subsection, all the parts of a compilation or derivative work constitute one work."[5]  17 U.S.C. § 504(c)(1).  "Although parts of a compilation or derivative work may be regarded as independent works for other purposes, for purposes of statutory damages, they constitute one work."  *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir. 2003) (internal quotation marks omitted), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).  It is undisputed on appeal that Cox's subscribers infringed 10,017 copyrighted works owned by Plaintiffs.  But Cox contends that many of those works cannot properly be the subject of separate

---

[5] The range depends on whether the infringement was willful.  Non-willful infringement results in a statutory damages range of $750 to $30,000 per work, whereas for willful infringement the upper limit increases to $150,000.  17 U.S.C. § 504(c)(1), (2).

statutory damages awards because they are part of a compilation or derivative work. Specifically, Cox claims that the number of compensable works was inflated in two ways: (1) by counting both musical compositions and their derivative sound recordings, and (2) by counting individual sound recordings that were compiled in a single album.

A "derivative work" is "a work based upon one or more preexisting works, such as a . . . sound recording[.]"  17 U.S.C. § 101.  The copyrighted works in this case include sound recordings and musical compositions, some of which overlap.  In other words, some of the copyrighted recordings are performances of the copyrighted compositions. Throughout this litigation, Cox has maintained that Plaintiffs cannot collect statutory damages for infringement of both a copyrighted musical composition and its derivative sound recording.  *See* 17 U.S.C. § 504(c)(1).

A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.  The term 'compilation' includes [a] collective work[]," which is "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  17 U.S.C. § 101. In Cox's view, a musical album is a compilation, and because "all the parts of a compilation . . . constitute one work" for purposes of statutory damages and some of the infringed songs were included on albums together, Plaintiffs were limited to one statutory damages award per album, not one per song.  17 U.S.C. § 504(c)(1).

27

Whether any of the works in this case are derivative or part of a compilation is a mixed question of law and fact. *See Bryant v. Media Right Prods.*, 603 F.3d 135, 140 (2d Cir. 2010); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1116 (1st Cir. 1993). The subsidiary legal questions were for the district court to resolve, and the factual questions were for the jury to decide. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) ("[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself."); *cf. Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199–1200 (2021) (explaining mixed questions of law and fact).

Before and during trial, the parties were aware of the need for evidence to identify the alleged derivative works and compilations among the 10,017 copyrighted works at issue. Pretrial, the district court denied Cox's motion for summary judgment on the topics, observing that issues of material fact remained. At various points during the trial, Cox acknowledged its obligation to put forth evidence identifying the derivative works and compilations and forecasted that it would do so through requests for admissions, answers to interrogatories, deposition testimony, certificates of registration, or expert testimony. But it did not, and pertinent testimony from Cox's expert witness was excluded from evidence as beyond the bounds of his expert report and disclosures.[6]  Having heard no

---

[6] Cox does not appeal this evidentiary ruling.

28

**Add. 28**

evidence or argument about the number of derivative works or compilations, the jury returned a statutory damages award for each of the 10,017 copyrighted works infringed.[7]

After trial, Cox asked the district court to reduce the damages award to account for derivative works and compilations. The court declined, and we review its judgment de novo. *See First Union Com. Corp.*, 411 F.3d at 556.

1.

Regarding derivative works, the district court agreed with Cox on the legal question, ruling that Plaintiffs were entitled to only one statutory damages award, not two, for infringement of a musical composition and its derivative sound recording.[8] But on the factual question, the court concluded that Cox had not presented evidence from which the jury could determine which recordings and compositions overlapped.

In support of its posttrial motion, Cox created three schedules identifying the works that it claimed overlapped and those that did not. To do so, Cox consulted two trial exhibits—PX1, which listed the infringed sound recordings, and PX2, which listed the infringed musical compositions—and the works' copyright registration certificates, some but not all of which were in evidence. Cox compared information from these sources, including the title of the work, artist, album, publication date, and ownership information,

---

[7] Cox does not challenge the jury instructions or verdict form on appeal.

[8] Sony challenges that ruling on appeal as an alternative basis for affirmance. Because we affirm on the ground Cox raised, we need not address Sony's alternative argument.

29

**Add. 29**

to make judgment calls about whether a particular sound recording and musical composition overlapped.

As the district court realized, this additional information necessary for distinguishing derivative from non-derivative works had not been presented to the jury. Even if the jury had been asked to comb through the thousands of entries on PX1 and PX2, that comparison alone would not have enabled it to determine which entries were derivative of each other, as demonstrated by Cox's posttrial submissions. The court therefore correctly concluded that it could not use the new analysis in Cox's posttrial schedules to decide which works were derivative and reduce the damages award. As the court explained, "Cox did not provide the information to the jury that it has provided to the [c]ourt in its post-trial brief," and "[t]he jury answered that question [about statutory damages] with the information available" at trial. *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950, 2021 WL 1254683, at *3 (E.D. Va. Jan. 12, 2021).

Cox now argues, based on the information it presented to the district court after trial, that the jury's verdict was unjust because 2,235 sound recordings are undisputedly derivative works. But like the district court when deciding the Rule 50 motion, we must assess the verdict based on the evidence before the jury, not Cox's efforts to supplement the record after trial. *See* 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2529 (3d ed. & Supp. 2023) ("Rule 50 motions must be considered in light of the evidence presented at trial."). Because the evidence at trial supported the jury's verdict, we affirm the district court's denial of judgment as a matter of law.

30

2.

As for compilations, Cox contends that Plaintiffs were not entitled to separate statutory damages awards for songs that were contained on the same album. We need not decide whether Cox's legal premise is sound because, even assuming it is for the sake of argument, Cox does not identify evidence from which the jury could have determined which songs were released on albums together.[9]

Nowhere in its briefing does Cox identify evidence it presented to the jury about whether infringed works were contained on albums. Neither PX-1 (the list of infringed sound recordings) nor PX-2 (the list of infringed compositions) mentions the album information for any work. To bridge this gap, Cox relies on the summary judgment record, citing deposition testimony and the supposed absence of dispute at that stage about certain facts. But we see no indication this evidence was presented to the jury, and our focus when reviewing the district court's Rule 50 ruling must be the record created at trial. *See* Fed. R. Civ. P. 50(a)(1); *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion."). Accordingly, we affirm the district court's denial of judgment as a matter of law on compilations too.

---

[9] The district court rejected Cox's legal theory. It instead followed the reasoning of the Second Circuit in *EMI Christian*, which "allowed separate statutory damages awards for songs that the plaintiffs issued as singles, even if those songs were also made available on albums." 844 F.3d at 101. Other circuits have applied a third approach—the "independent economic value test"—to determine whether a copyrighted work is part of a compilation subject to only one statutory damages award. *See, e.g.*, *Sullivan v. Flora, Inc.*, 936 F.3d 562, 570–572 (7th Cir. 2019). We need not delve into these conflicting interpretations of the Copyright Act to resolve this appeal.

31

**Add. 31**

V.

For the foregoing reasons, we reverse the district court's order denying Cox judgment as a matter of law on Sony's claim of vicarious copyright infringement. We affirm the district court's orders denying Cox relief from the jury's contributory infringement verdict and denying judgment as a matter of law regarding the number of derivative works and compilations. Given our reversal of the vicarious liability verdict, we also vacate the damages award and remand for a new trial on the amount of statutory damages to be awarded.

*SO ORDERED*

**Add. 32**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of March 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Catherine E. Stetson
Catherine E. Stetson