# No. 21-1168

## In the
## United States Court of Appeals
## for the Fourth Circuit

SONY MUSIC ENTERTAINMENT, ET AL.,

*Plaintiffs-Appellees*,

v.

COX COMMUNICATIONS, INC. and COXCOM, LLC,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 1:18-cv-950
(The Honorable Liam O'Grady)

**PLAINTIFFS-APPELLEES' RESPONSE TO APPELLANTS' MOTION FOR PARTIAL AWARD OF COSTS UNDER RULE 39 AND OBJECTIONS TO APPELLANTS' BILL OF COSTS**

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, D.C. 20016
(202) 480-2999
matt@oandzlaw.com

Catherine E. Stetson
Jo-Ann Tamila Sagar
Michael J. West
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

March 18, 2024

*Counsel for Plaintiffs-Appellees*

## INTRODUCTION

A jury found Cox liable, on two separate grounds, for willful infringement of over 10,000 of Plaintiffs' copyrighted works. On appeal, a panel of this Court upheld one basis of liability and remanded for further proceedings on statutory damages. Yet Cox now wants the holders of those infringed copyrights to pay Cox's appellate costs. Specifically, Cox seeks "50% of the costs" of the supersedeas bond Cox used to secure the jury's damages award. *See* Motion for Partial Award of Costs Under Rule 39 at 1 (ECF No. 97-1) ("Mot."). Cox also seeks $2,094.80 in filing and printing costs. *See* Bill of Costs (ECF No. 96).

This Court should deny Cox's Motion and its Bill of Costs and hold that the parties are responsible for their own costs. Cox's request for bond costs fails at the outset: "[T]he premiums paid for any required appeal bond" "must be settled at the district court level." Loc. R. 39(c). In any event, Cox's request proceeds from the fundamentally incorrect premise that it is a prevailing party. It is not; the panel affirmed the jury's liability finding and, although the damages award was vacated, that same award (or more, for that matter) could be reimposed for Cox's willful contributory infringement on remand. In a mixed-result appeal like this one, courts hold the parties to their own costs. Finally, Cox's Bill of Costs is wildly inflated. At most, Cox can recover $548.70 in filing and printing costs.

1

# STATEMENT

Plaintiffs sued Cox in 2018 for contributory copyright infringement and vicarious copyright infringement. Plaintiffs' claims covered 10,017 works. In late 2019, the jury ruled for Plaintiffs, finding Cox liable for contributory and vicarious infringement. JA822-823. The jury also found that Cox's conduct was willful, which raised the statutory damages cap to $150,000 per work infringed. JA823; 17 U.S.C. § 504(c)(2). The jury awarded Plaintiffs statutory damages of $99,830.29 for each infringed work, for a total damages award of $1 billion. JA823.

After trial, Cox asked Plaintiffs to agree to stay the judgment during appeal *without* Cox posting a supersedeas bond under Federal Rule of Civil Procedure 62(b). *See* Mot. 1-2. Plaintiffs declined to allow Cox to appeal a $1 billion verdict without first securing the entirety of that judgment. *See id.* at 2.[1]

On appeal, Cox made eight distinct arguments for why this Court should reverse the jury's verdict and vacate the damages award. The panel agreed with two of them. On the merits, the panel upheld the jury's contributory-infringement verdict, rejecting one of Cox's challenges as forfeited and one as lacking merit. *See*

---

[1] Several companies have filed for bankruptcy after being sued for copyright infringement. *See, e.g.*, Reuters, *Online Music Storage Firm MP3tunes Files For Bankrupcy*, (May 11, 2012), *available at* https://www.reuters.com/article/idUSDEE84A02O/; Meghan Collins, CNN, *Napster Files for Bankruptcy* (June 3, 2002), *available at* https://perma.cc/H3XK-RCDX.

2

Slip Op. 17-23. But the panel vacated the jury's vicarious-liability finding on the ground that Plaintiffs had failed "to show that Cox profited from its subscribers' infringing download and distribution of Plaintiffs' copyrighted songs." *Id.* at 13.

As to remedies, the panel rejected Cox's argument that reversal of the vicarious-infringement verdict necessitated a vacatur of the contributory-infringement verdict. *Id.* at 24. And the panel further rejected Cox's two arguments that the damages award should be reduced to account for supposedly duplicative works. *See id.* at 26-31. The panel, however, "conclude[d] that reversal of the vicarious infringement verdict warrants vacatur of the damages award." *Id.* at 24. For that reason, the panel "remand[ed] for a new trial on damages." *Id.*

Both Plaintiffs and Cox have sought rehearing. *See* ECF Nos. 94, 95. As Plaintiffs explain in their petition, the panel overlooked Cox's invited error when the panel vacated the damages award and, if it in fact excused that waiver, broke with Circuit precedent. Cox, for its part, has sought rehearing en banc. Those petitions are still pending.

On the same day Cox sought rehearing, it filed a Bill of Costs (ECF No. 96) and a Motion for Partial Award of Costs Under Rule 39 (ECF No. 97-1). The Bill of Costs itemizes Cox's filing and printing fees, and requests costs in the amount of $2,094.80. Cox's Motion requests that this "Court … award Cox 50% of the costs

3

to obtain a bond to preserve its rights pending appeal." Mot. 1. This would equate to roughly $5.6 million. *See* Mot. 2.

## ARGUMENT

I.  **COX'S SUPERSEDEAS BOND COSTS ARE NOT RECOVERABLE IN THIS COURT UNDER LOCAL RULE 39(c).**

This Circuit has divided the responsibility of "satisfying the entitlement to 'costs' incident to the appeal" between "the district court and the court of appeals." *Blackburn v. Reich*, 79 F.3d 1375, 1378 (4th Cir. 1996). Under Local Rule 39(c), "[t]he only costs generally taxable in the Court of Appeals are: (1) the docketing fee if the appellant is the prevailing party; and (2) the cost of printing or reproducing briefs and appendices, including exhibits." Loc. R. 39(c) (emphasis added). As the Rule explains: "Various costs incidental to an appeal must be settled at the district court level. Among such items are: … *the premiums paid for any required appeal bond*. Application for recovery of these expenses by the successful party on appeal must be made in the district court." *Id.* (emphasis added). It is "erro[r]" to apply for recovery of such costs "in the Court of Appeals." *Id.* Local Rule 39(c) thus goes further than Federal Rule of Appellate Procedure 39(e), which provides merely that bond premiums "are taxable in the district court."

Local Rule 39(c) plainly bars Cox's request that this Court award it some of its bond costs. Cox itself "recognizes" that Local Rule 39(c) applies here. *See* Mot. 3-4. And this Court previously has denied an appellant's request for bond costs. *See*

4

*Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2022 WL 989743, at *4 n.1 (E.D.N.C. Mar. 11, 2022) (explaining that, after it vacated a damages award and remanded for a new damages trial, this Court denied the appellant's request that this Court "allocate costs associated with its supersedeas bond"). This Court should accordingly apply Local Rule 39(c) and deny Cox's request for a partial award of bond costs.

Cox tries to skirt Local Rule 39(c) by arguing that although that Rule requires that bond costs be *taxed* in the District Court, this Court should *apportion* those costs under *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330 (2021). *See* Mot. 3-4. That case boomerangs on Cox. The Court in *Hotels.com* held "that courts of appeals have the discretion to apportion all the appellate costs covered by [Federal] Rule 39." 593 U.S. at 340. But the Court also explained that "if a court of appeals thinks that a district court is better suited to allocate the appellate costs listed in Rule 39(e), the court of appeals may delegate that responsibility to the district court." *Id.* at 342.

Local Rule 39(c) formalizes that delegation of authority. *See Eshelman*, 2022 WL 989743 at *4 n.1 (quoting *Hotels.com*'s "delegat[ion]" language and Local Rule 39(c)). Rather than have each Fourth Circuit panel determine whether it or the District Court should determine the fact-intensive question of whether one party or the other should bear which portion of bond costs, Local Rule 39(c) categorically directs that such costs "must be settled at the district court level."

5

This "pragmatic approach" makes good sense. *Hotels.com*, 593 U.S. at 342. For one thing, bond costs are "incurred in the district court" and so are more naturally addressed there. *Id.* at 340. And for another, as this case illustrates, allocating bond costs equitably at this stage of proceedings is entirely premature. *See infra* pp. 9-11. Cox's argument appears to be that it is unfair for Cox to pay the portion of bond premiums attributable to the overturned vicarious-liability finding. *See* Mot. 7-8. But because Cox sought a unitary statutory damages award (*see* Plaintiffs' Pet. for Rehearing 9-10), there is no way of knowing what that portion is, if any; it could well be that the same—or greater—amount of statutory damages is awarded on remand. *See infra* p. 9. And even if the jury awards a lower amount, there is no way of knowing whether the difference between that amount and the original award is attributable to the vicarious-liability verdict. Local Rule 39(c) resolves these issues by requiring that bond costs be "settled at the district court level."

Cox's other primary case (*see* Mot. 5-6), *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616 (8th Cir. 2003), illustrates the proper procedure in cases like this one. After securing a reversal of one of the plaintiffs' theories of liability, the defendant in that case "moved [the Eighth Circuit] to tax as costs to the plaintiffs the supersedeas bond premiums the Company paid" to secure the original damages award. *Id.* at 626. The Eighth Circuit "directed the [defendant] to take its request to the District Court." *Id.* The District Court, for its part, "deferred decision on" the

6

costs "motion until after" remand proceedings were complete. *Id.* On remand, the jury issued a damages award that "was several million dollars less than in the first" trial. *Id.* at 619, 627. In light of this new damages award, the District Court awarded the defendants "the cost of the supersedeas bond attributable to the" since-reversed theory of liability. *Id.* at 626. The Eighth Circuit affirmed this exercise of discretion. *See id.* at 627.

*Emmenegger* thus supports the logical and practical conclusion that the proper procedure in these circumstances is to *wait and see what portion—if any—of the vacated award was attributable to that reversed theory*, and then determine whether the appellant is entitled to those costs.[2] Local Rule 39(c) embodies that conclusion by requiring that District Courts—not this Court—"settle[]" supersedeas bond costs.[3]

In short, Local Rule 39(c) bars Cox's request for a partial award of its supersedeas bond costs. This Court should accordingly deny Cox's motion.

---

[2] To be clear, Plaintiffs do not concede that Cox is entitled to *any* portion of its bond costs, even in the District Court, because it is not a prevailing party. *See infra* pp. 8-12.

[3] The District Court must "settle" the question, but it, too, may lack authority to award Cox its bond costs. As the Supreme Court recognized in *Hotels.com*, the Supreme Court has "interpreted [Federal] Rule 54(d)," which authorizes the prevailing party to recover appellate costs, "to provide for taxing only the costs already made taxable by statute, namely, 28 U.S.C. § 1920." *Hotels.com*, 593 U.S. at 341 n.4. "Supersedeas bond premiums, despite being referenced in Appellate Rule 39(e)(3), are not listed as taxable costs in § 1920." *Id.* Although the

7

## II.  COX IS NOT ENTITLED TO ANY COSTS BECAUSE IT IS NOT A PREVAILING PARTY.

Even if Local Rule 39(c) did not squarely preclude Cox's motion for a partial award of bond costs, this Court should deny that motion because Cox is not a prevailing party. The Court should deny Cox's Bill of Costs for the same reason.

Federal Rule of Appellate Procedure 39 governs the taxation of costs on appeal. "[I]f a judgment is affirmed, costs are taxed against the appellant." Fed. R. App. P. 39(a)(2). "[I]f a judgment is reversed, costs are taxed against the appellee." Fed. R. App. P. 39(a)(3). And "if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders." Fed. R. App. P. 39(a)(4). Costs are thus taxed "in consideration of the success of the parties to the appeal relative to each other." *JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 245 F. Supp. 2d 756, 758 (E.D. Va. 2002) (citation omitted).

Based on these principles, courts have recognized that the "usual practice when each side wins something and loses something" is to "requir[e] each party to bear its own costs." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1081 (9th Cir. 2009) (denying appellants' request to allocate bond costs after the Court of Appeals affirmed on liability but reduced the award by billions of dollars); *see also McKnight*

---

Court did not consider this issue because the petitioner did not raise it, *see id.*, the unsettled nature of the District Court's authority to award Cox bond costs under § 1920 is yet another reason to allow the District Court to consider Cox's entitlement to bond costs in the first instance.

8

*v. Circuit City Stores, Inc.*, 14 F. App'x 147, 157 (4th Cir. 2001) (per curiam) (requiring each party to bear its own costs where this Court affirmed in part, vacated in part, and remanded for further proceedings); 16AA Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3985 (5th ed. Apr. 2023 update) (explaining that, in mixed-result appeals, "the court may determine that each party should bear its own costs").[4]

This Court should apply this "usual practice" here. *Exxon Valdez*, 568 F.3d at 1081. Cox is still liable for the willful infringement of over 10,000 of Plaintiffs' copyrighted works. And any new trial on damages will look a lot like the original one, in which Cox will once again be exposed to the prospect of over $1.5 billion in statutory damages for its willful conduct, such that at the end of Round 2, Cox might be on the hook for an even larger amount. This is no victory for Cox.

Cox's view, of course, is that the jury's award was "inflated" by Plaintiffs' argument that Cox directly profited from infringement on its network. Mot. 6. But

---

[4] *See also, e.g.*, *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 753 F. App'x 184, 186, 190-191 (5th Cir. 2018) (explaining that after the Fifth Circuit "affirmed in part, reversed and rendered in part, vacated in part, and remanded" for a new determination of damages, the Fifth Circuit "ordered that each party bear its own costs on appeal"); *Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 672 (9th Cir. 2018) (denying costs to appellant despite reversing part of liability judgment, vacating damages award, and remanding for new determination of damages); *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1305, 1313 (Fed. Cir. 2002) (ordering each side to bear their own costs after affirming on liability but vacating the damages award and remanding for new determination of damages).

the jury was—and will be—entitled to consider Cox's corporate profits when determining the amount of statutory damages necessary to deter Cox. *See, e.g.*, D. Ct. ECF No. 671 at 29 (directing the jury to consider deterrence); Committee on Pattern Civil Jury Instructions of the Seventh Circuit, *Federal Civil Jury Instructions Of The Seventh Circuit* 353 (rev. 2017), *available at* https://perma.cc/C4MQ-85SV (standard statutory damages instruction directing same); Judicial Council of the United States Eleventh Judicial Circuit, *Eleventh Circuit Pattern Civil Jury Instructions, Civil Cases* 9.32 (rev. 2013), *available at* https://perma.cc/U3MZ-SRH7 (same).

Cox's own list of quotes on page 7 of its Motion makes this clear—these quotes all discuss Cox's profits in the context of *deterrence*.[5] It is thus entirely

---

[5] No doubt to maximize effect, Cox divvies up one page of closing argument into three different quotes. *See* Mot. 7 (quoting Trial Tr. 2974 (D. Ct. ECF No. 674)). Below is the full page from Plaintiffs' closing argument:

> Let's turn quickly to Cox's revenues and profits. Please pay attention to the end of jury instruction No. 28, where the Court will instruct you that you may consider the amount to have a deterrent effect, and when you consider that, consider Cox's profits from its high-speed internet business between 2013 and '14. It was $8.3 billion. That is a big, big number. All of Cox's focus on retaining customers and cutting costs worked, or at least worked for Cox.
>
> Mr. Bakewell criticized Dr. Lehr's analysis for not considering costs, but these profit numbers account for them. Cox's profits were so excessive that between 2013 and 2014, Cox paid $2.9 billion, billion with a "B," in cash dividends to its owners. This is after costs, taxes, interest, and capital investment.

speculative to conclude that the size of the jury's award and the resulting supersedeas bond "direct[ly] resulted" from the one slice of this case where Cox prevailed: vicarious liability. Mot. 7. And this speculation is exactly why courts typically direct each party to bear their own costs in cases like this one.

The two cases Cox cites are not to the contrary. *See* Mot. 5. In *Emmenegger*, as explained, the court waited to apportion costs until it was clear what portion of the original award was attributable to the overturned theory. *See supra* pp. 6-7. And *Binakonsky v. Ford Motor Co.*, 133 F.3d 281 (4th Cir. 1998), was an appeal from a grant of summary judgment; there was no damages award in that case, let alone one that could very well be the same—or higher—on remand.

Cox is thus reduced to complaining that Plaintiffs did not agree to let Cox appeal a $1 billion award without offering security. *See* Mot. 1-2, 7-8. But securing

---

> If you remember nothing else about Cox's finances, remember Cox had so much free cash on hand, it could pay its shareholders 1 to 1.5 billion dollars a year while continuing to grow the business and while the infringement continued unabated.
>
> Given Cox's conduct, how much of those profits should the Cox family get to retain, and how much should be turned over to the plaintiffs?
>
> Cox's profits were massive. In fact, even if you awarded the maximum statutory damages under willfulness, it's not clear that even that would have a deterrent effect because Cox has so much cash.

Trial Tr. 2974-75. Cox's other quotes are similarly ripped from their context.

11

a supersedeas bond for the entire amount of the award is standard practice.[6] And given the magnitude of the award, it was eminently reasonable for Plaintiffs to seek more security than Cox's mere word.

### III.  COX'S BILL OF COSTS IS INFLATED.

There is one more issue with Cox's request for costs:  Its requested filing and printing fees are inflated.  Altogether, Cox—a company that maintains that it has "a demonstrated ability to satisfy" a $1 billion judgment, Mot. 2—requests $2,094.80 in filing and printing costs.  If this Court deviates from the usual practice and taxes some of Cox's costs against Plaintiffs—despite Plaintiffs having prevailed on one willful-infringement finding—the Court should substantially reduce the claimed amount.

Cox points out that "if, for example, the appellant wins what is essentially a 75% victory, the appellant can be awarded 75% of its costs."  Mot. 3 (quoting *Hotels.com*, 593 U.S. at 337 n.3).  So let's look at the percentage of costs Cox seeks.  It costs $600 to docket a case in this Court.  *See* Bill of Costs 1.  Cox requests $500 as costs for that fee—roughly 83% of the total.  *Id.*  The maximum recoverable

---

[6] *See* Will Kenton, *Appeal Bond: What it is, How it Works, Special Considerations*, Investopedia (Nov. 28, 2021), *available at* https://perma.cc/4XTF-DLXM; Dan Huckabay, Court Surety Bond Agency, *How Much Does an Appeal Bond Cost?* 1 (Feb. 2021), *available at* https://perma.cc/5RRZ-E4TF ("In most jurisdictions, the bond not only covers the underlying judgment but costs and interest during the appeal up to some cap typically between 1.2 and 1.5 times the judgment amount.").

12

printing cost in this Court is $0.15 per page. *Id.* Cox requests that rate for 88 pages (~98%) of its Opening Brief, 41 pages (~95%) of its Reply Brief, and 2,529 pages of the Appendix. *Id.*

But Cox did not win 98, or 95, or 83 percent of this appeal. *It remains liable for willful infringement.* To the extent Cox's partial success on appeal can be reduced to mathematical terms at this stage (and it cannot, *see supra* pp. 9-11), Cox is owed, charitably, 25% of its filing and printing costs—the percentage of Cox's eight separate arguments that this Court accepted. *See supra* pp. 2-3. That equates to $548.70. Should this Court conclude that Cox is owed this amount, it should make clear under Local Rule 39(c) that the District Court is not bound by this allocation should Cox request a portion of its bond costs in the District Court.

13

## CONCLUSION

For the foregoing reasons, this Court should deny the Motion for Partial Award of Costs Under Rule 39 and the Bill of Costs. To the extent this Court exercises its discretion to award Cox some portion of its costs despite its mixed success, this Court should reduce those costs to $548.70.

Respectfully submitted,

March 18, 2024

Matthew J. Oppenheim
Scott A. Zebrak
Jeffrey M. Gould
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave. NW, 5th Floor
Washington, D.C. 20016
(202) 480-2999
matt@oandzlaw.com

/s/ Catherine E. Stetson
Catherine E. Stetson
Jo-Ann Tamila Sagar
Michael J. West
HOGAN LOVELLS US LLP
555 Thirteenth St. NW
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Plaintiffs-Appellees*

14

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 21-1168     Caption: Sony Music Entertainment v. Cox Communications, Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains **3,415** [state number of] words

[ ] this brief uses monospaced type and contains _____ [state number of] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using **Microsoft Word** [identify word processing program] in **14 point Times New Roman** [identify font size and type style]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [identify word processing program] in _____ [identify font size and type style].

(s) Catherine E. Stetson

Party Name Sony Music Entertainment et al.

Dated: 3/18/2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

<u>/s/ Catherine E. Stetson</u>
Catherine E. Stetson