No. 21-1168

IN THE
# United States Court of Appeals for the Fourth Circuit

SONY MUSIC ENTERTAINMENT, ET AL.,
*Plaintiffs-Appellees*,

*v.*

COX COMMUNICATIONS, INC. and COXCOM, LLC,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 1:18-cv-950 (LO/JFA)
Hon. Liam O'Grady

## DEFENDANTS-APPELLANTS COX COMMUNICATIONS, INC. AND COXCOM, LLC'S MOTION TO STAY THE MANDATE

Michael S. Elkin
Jennifer A. Golinveaux
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166

Mark S. Davies
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037

E. Joshua Rosenkranz
Christopher J. Cariello
Alexandra Bursak
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Counsel for Defendants-Appellants*

March 25, 2024

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................ii

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................. 3

ARGUMENT ................................................................................ 5

I.    The Mandate Should Not Issue While This Court Continues To Exercise Jurisdiction Over Cox's Appeal From Denial Of Its Rule 60(b) Motions. ............................. 5

II.    The Court Should Stay The Mandate Pending Disposition Of Cox's Petition For A Writ Of Certiorari. ....... 8

    A.    Cox's petition will present two substantial questions. ....................................................... 8

        1.    This Court's law creates a circuit split and conflicts with Supreme Court precedent on the material contribution element of contributory liability. .......................................... 8

        2.    This Court's definition of willfulness conflicts with fundamental willfulness principles and Eighth Circuit precedent. .......... 13

    B.    There is good cause to stay the mandate.................... 16

CONCLUSION ............................................................................. 19

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan,*
  501 U.S. 1301 (1991)................................................................ 16, 17

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.,*
  881 F.3d 293 (4th Cir. 2018)................................................ 3, 14, 15

*Brooks v. City of Elkhart,*
  239 F.3d 826 (7th Cir. 2001)........................................................ 16

*United States ex rel. Chandler v. Cook Cnty.,*
  282 F.3d 448 (7th Cir. 2002).......................................................... 8

*Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA,*
  313 F.3d 852 (4th Cir. 2002).......................................................... 18

*Gradsky v. United States,*
  376 F.2d 993 (5th Cir. 1967).......................................................... 5

*Greater Bos. Television Corp. v. FCC,*
  463 F.2d 268 (D.C. Cir. 1971).......................................................... 5

*Griggs v. Provident Consumer Disc. Co.,*
  459 U.S. 56 (1982)...................................................................... 6

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010).................................................................... 17

*Maryland v. King,*
  567 U.S. 1301 (2012)............................................................... 8, 16

*Matthew Bender & Co. v. West Publ'g Co.,*
  158 F.3d 693 (2d Cir. 1998) ............................................................ 9

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988).................................................................... 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ................................................................ 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ............................................. 10

*RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co.*,
    845 F.2d 773 (8th Cir. 1988) ............................................... 14

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974) ................................................................. 16

*Rostker v. Goldberg*,
    448 U.S. 1306 (1980) ........................................................... 17

*Safeco Ins. v. Burr*,
    551 U.S. 47 (2007) ............................................................... 13

*Sony v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................. 11

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ............................................... 11, 12, 13

**Statutes & Rules**

17 U.S.C. § 504(c) ....................................................................... 15

28 U.S.C. § 2106 ........................................................................... 1

Fed. R. App. P. 41(b) .................................................................... 4

Fed. R. App. P. 41(d) ............................................................ 1, 2, 8

Loc. R. 41 ...................................................................................... 1

S. Ct. R. 10(a) ........................................................................... 8, 9

S. Ct. R. 10(c) ......................................................................... 8, 10

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 41(d) and Local Rule 41, as well as this Court's inherent authority to administer appellate proceedings under 28 U.S.C. § 2106, Defendants-Appellants Cox Communications, Inc. and CoxCom, LLC (collectively, Cox) move the Court to stay the issuance of its mandate pending the resolution of further appellate proceedings (a) in this Court and (b) in the U.S. Supreme Court, pending filing and disposition of a petition for a writ of certiorari. Cox notified Plaintiffs of its intent to file this motion, and Plaintiffs stated that they take no position at this time and reserve response.

A stay of the mandate is warranted on two independent grounds.

*First*, this Court has not yet resolved all of Cox's challenges to the initial judgment from which Cox appealed. *Infra* § I. Still pending in this Court is Cox's appeal from the denial of its motions for relief from that judgment under Federal Rule of Civil Procedure 60(b). *See Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 22-1451 (Rule 60(b) Appeal). If this Court issues the mandate and the district court proceeds with litigation on damages, it would not only risk unnecessary or piecemeal

litigation but also impede this Court's ability to fully resolve the challenges to the judgment. This Court should stay the mandate to avoid that harm.

*Second*, a stay is warranted pending Cox's petition for certiorari to the Supreme Court. Cox's petition will "present … substantial question[s]" for certiorari, and "there is good cause for a stay," Fed. R. App. P. 41(d)(1). *Infra* § II. This case presents two exceptionally important questions on which this Court's rulings depart from those of other circuits. On the first—whether an internet service provider materially contributes to copyright infringement by declining to disconnect an internet account knowing someone is likely to use it to infringe—the panel decision creates a three-way circuit split and raises substantial questions implicated by recent Supreme Court law. On the second—whether a secondary infringer can be adjudged willful based merely on knowledge of another's direct infringement—this Circuit's law, settled before the panel decision, conflicts with Eighth Circuit law and bedrock willfulness principles.

There is also good cause to stay the mandate based on the above grounds. If the mandate issues and the district court purports to

2

exercise jurisdiction over further proceedings, Cox would be irreparably deprived of its opportunity to obtain full and fair appellate review of the initial liability judgment before being subjected to damages proceedings in the district court. The district court would be proceeding in parallel with retrial proceedings that purport to settle Cox's rights and obligations on damages issues, while two appellate courts evaluate whether liability is appropriate in the first instance. On the other hand, a stay does not harm Plaintiffs; indeed, a stay would be far more equitable and efficient for the parties and the district court, and orderly resolution of the exceedingly important questions presented in this appeal is in the public interest as well.

## BACKGROUND

Plaintiffs sued Cox on two theories of secondary infringement: vicarious and contributory liability. A jury found for Plaintiffs on both theories, and further found Cox willful based on a jury instruction previously approved in *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 312-13 (4th Cir. 2018). *See* JA822-23. The jury ultimately awarded $1 billion in damages. JA823. Cox appealed, challenging both theories of liability.

3

While that appeal was pending, discovery in related secondary infringement litigation against a different internet service provider (ISP) brought to light new evidence that revealed severe flaws in Plaintiffs' case for direct infringement and serious misconduct on Plaintiffs' part in this case. Cox sought relief from judgment under Rule 60(b)(2) and (b)(3). D. Ct. Dkt. 737, 738, 748, 749. The district court denied both motions on March 23, 2022. D. Ct. Dkt. 796. Cox appealed. D. Ct. Dkt. 798. This Court placed the Rule 60(b) appeal in abeyance pending a decision in the secondary liability appeal. Rule 60(b) Appeal, Dkt. 24.

The panel issued its decision and judgment on February 20, 2024. Dkt. 92, 93. It correctly concluded that "Cox is not vicariously liable for its subscribers' copyright infringement," reversing the jury verdict and vacating the damages award. Op. 9-16, 24-25. But the panel affirmed the contributory liability verdict, remanding for a new damages trial. Op. 32. This Court then issued a briefing schedule for the Rule 60(b) appeal. Rule 60(b) Appeal, Dkt. 29.

Under Federal Rule of Appellate Procedure 41(b), the mandate is scheduled to issue on March 26, 2024. A petition for a writ of certiorari

4

will be due on June 17, 2024.

## ARGUMENT

**I.    The Mandate Should Not Issue While This Court Continues To Exercise Jurisdiction Over Cox's Appeal From Denial Of Its Rule 60(b) Motions.**

"Usually the issuance of a mandate … means that the litigation has come to an end." *Greater Bos. Television Corp. v. FCC*, 463 F.2d 268, 277 (D.C. Cir. 1971) (quoting *Gradsky v. United States*, 376 F.2d 993, 995 (5th Cir. 1967)).  But litigation has not come to an end here. While litigation is complete in one appeal from the judgment—No. 21-1168, the subject of the panel opinion—Cox's other appeal, No. 22-1451, remains pending.  *See* Rule 60(b) Appeal, Dkt. 29 (March 5, 2024 order issuing a briefing schedule).  This Court should not issue the mandate before *all* litigation challenging the liability judgment is complete.

The two appeals challenge the same underlying judgment.  Both concern liability:  The Rule 60(b) appeal addresses direct infringement, which is a necessary element of any theory of secondary liability.  The relationship between the appeals has been clear to all from the time Cox noticed the second appeal.  When Cox appealed from denial of the Rule 60(b) motions, it made the link between the two appellate

challenges to the judgment explicit, seeking to hold the latter in abeyance because a panel decision reversing the judgment could obviate the need to litigate denial of a motion for relief from that judgment. Rule 60(b) Appeal, Dkt. 18. Plaintiffs opposed that motion, taking the position that Cox should have sought to hold its *first* appeal "in abeyance[,] so that any appeal of the district court's Rule 60(b) decision c[ould] be consolidated with the merits appeal." Rule 60(b) Appeal, Dkt. 21 at 1. Both parties thus well-understood that the principal appeal and Rule 60(b) appeal are intertwined appellate challenges to the same judgment, both of which would need to be resolved before restoring jurisdiction to the district court. The district court would thus lack jurisdiction to proceed with a retrial. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal … divests the district court of its control over those aspects of the case involved in the appeal."). Staying the mandate accords with that fundamental principle.

By contrast, if this Court issues the mandate and the district court takes that as a signal that its jurisdiction is restored, that would cause exactly the harms the rule against concurrent jurisdiction is meant to

6

avoid.  The Rule 60(b) appeal and damages proceedings turn on related legal and factual issues.  For instance, the damages jury would be instructed that the "circumstances of the infringement" should be considered in assessing statutory damages.  D. Ct. Dkt. 671 at 29 (jury instructions).  At the same time, the Rule 60(b) appeal concerns those same circumstances, including, most notably, whether direct infringement took place.  Thus, if the district court assumed jurisdiction, the proceedings below would be a moving target.  The district court would assume direct infringement occurred—the very aspect of the judgment being challenged on appeal, which in turn would risk inconsistent results.  *Cf. United States ex rel. Lutz v. United States*, 853 F.3d 131, 140 (4th Cir. 2017) ("Piecemeal litigation is disfavored.").  Indeed, allowing the district court to proceed to damages retrial on the flawed (and related) liability verdict gives rise to the possibility that the new damages verdict would rest on the very same errors challenged in the Rule 60(b) appeal, inviting yet further piecemeal litigation.

Because the Rule 60(b) appeal remains pending and within this Court's jurisdiction, the mandate should not issue.

7

## II.    The Court Should Stay The Mandate Pending Disposition Of Cox's Petition For A Writ Of Certiorari.

A stay of the mandate is independently appropriate pending Cox's petition for a writ of certiorari.  A stay is warranted where a petition for certiorari would "present a substantial question" and "there is good cause for a stay."  Fed. R. App. P. 41(d)(1).  Cox's application meets both criteria.

### A.  Cox's petition will present two substantial questions.

A petition presents a substantial question for certiorari where there is a "reasonable probability" the Supreme Court will grant certiorari and a "'fair prospect'" of reversal.  *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers); *see, e.g.*, *United States ex rel. Chandler v. Cook Cnty.*, 282 F.3d 448, 450 (7th Cir. 2002).  Those factors, in turn, are met where the decision below "conflicts with decisions" from the Supreme Court and other Courts of Appeal and the "split implicates an important" and widespread issue.  *King*, 567 U.S. at 1302 (Roberts, C.J., in chambers); *see* S. Ct. R. 10(a), (c).

### 1.    This Court's law creates a circuit split and conflicts with Supreme Court precedent on the material contribution element of contributory liability.

**a.**  Cox's petition presents a substantial question because this case

8

would have come out differently in other circuits. *See* S. Ct. R. 10(a) (Supreme Court considers whether "decision [is] in conflict with the decision of another United States court of appeals"). The decision below creates a three-way conflict over what constitutes a "material contribution" to infringement—specifically, under what conditions providing a service with myriad lawful uses renders the provider contributorily liable when someone uses that service to infringe.

The Second Circuit, in a case about an electronic database, has held that "provision of equipment does not amount to contributory infringement if the equipment is 'capable of substantial noninfringing uses'" absent conduct "influenc[ing]" or "encourag[ing] unlawful copying." *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998). That rule would entitle Cox to judgment as a matter of law on all claims. *See* OB43-49.

The Ninth Circuit has adopted a laxer test than the Second, but a more stringent one than this Court: Even without direct encouragement, a defendant may still be liable "if it has actual knowledge that specific infringing material is available using its system, and can take simple measures"—defined as "reasonable and

9

feasible" steps—"to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (citations omitted).  Though that standard does not comply with Supreme Court precedent, *see infra* § II.A.1.b, it still would not yield liability in this case.  There are no simple measures available here:  Termination of subscribers' internet service—the only "measure" at issue here—could never be reasonable and feasible for the vast majority of alleged infringers here.  OB49-51.

The decision below adopts a stricter rule under which providing internet service with knowledge specified subscribers will use their connections to infringe is *categorically* sufficient to show a material contribution to infringement.  Op. 22.  The conflict with the Second Circuit's and Ninth Circuit's approaches makes review likely.

**b.**  The probability of certiorari is all the greater because there is a substantial likelihood that the Supreme Court views the panel decision as conflicting "with relevant decisions of [the Supreme] Court," S. Ct. R. 10(c).

Material contribution is a species of contributory infringement,

10

which is copyright's aiding-and-abetting liability. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005); Op. 23. The Supreme Court has repeatedly emphasized that the touchstone of such liability is "culpable expression and conduct." *Grokster*, 545 U.S. at 937. *Sony v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), first "barred secondary liability based on presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use." 545 U.S. at 933. *Grokster* then reiterated that contributory liability requires "affirmative steps taken to foster infringement"—for instance, selling a product "good for nothing else but infringement" or taking "active steps … to encourage direct infringement." *Id.* at 919, 932, 936 (quotation marks omitted).

Just last term, the Supreme Court applied those aiding-and-abetting principles to an online service provider in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). Though *Twitter* was not a copyright case, it confronted a directly analogous theory of secondary liability: that social-media platforms, including Twitter and YouTube, could be liable for continuing to provide services to those they knew were using them for illegal purposes (there, to aid acts of terrorism). Recognizing

11

that secondary liability for assisting another's wrong requires a defendant to "take some affirmative act with the intent of facilitating the offense's commission," 598 U.S. at 490 (quotation marks omitted), the unanimous Court rejected liability. It held that merely providing "infrastructure" that is "generally available to the internet-using public" is not an "affirmative act" demonstrating a culpable intent to aid unlawful conduct, *id.* at 490, 498-99—even where defendants "knew that ISIS was uploading [terrorism-promoting] content" on their platforms, *id.* at 498.

Notably, this Court's decision does not mention *Twitter*. It holds that "supplying [internet service] with knowledge that the recipient will use it to infringe copyrights is exactly the sort of culpable conduct sufficient for contributory infringement," Op. 22. Though the panel found otherwise, there is at least a substantial likelihood that the Supreme Court—which has just recently demonstrated its interest in assessing the limits of aiding-and-abetting liability—could determine the material contribution holding conflicts with its contributory infringement law, as well as *Twitter*'s holding that a defendant who provides a customer with internet "infrastructure which provides

12

material support" to wrongdoers is not liable even if it knows that the customer is "using the service for illicit ends." 598 U.S. at 498-99, 501.

**c.** The question is exceptionally important to copyright defendants and the public. This Court's material-contribution standard provides powerful incentives for ISPs of all stripes to swiftly terminate internet services that have been used to infringe— no matter the universe of lawful uses to which those services are put, or the consequences to innocent, non-infringing people who also use those services. That is why a chorus of amici urged this Court not to adopt this standard at the panel and en banc stages, and will likely urge the Supreme Court to grant review as well.

**2. This Court's definition of willfulness conflicts with fundamental willfulness principles and Eighth Circuit precedent.**

Cox's petition will also present a second question on which there is a circuit conflict. The Supreme Court has long held that a willful actor is one who knows *its own* actions are *prohibited by law*—someone who is "reckless in falling down in [their] duty." *Safeco Ins. v. Burr*, 551 U.S. 47, 68 (2007). Where, by contrast, a defendant "acts reasonably in determining *its legal obligation*, its action cannot be deemed willful."

13

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988)
(emphasis added). In the context of secondary liability, that requires
the defendant's knowledge that *its* conduct violates the law—not merely
knowledge that someone else has committed a wrong.

That is exactly what the Eighth Circuit held in *RCA/Ariola Int'l,
Inc. v. Thomas & Grayston Co.*, 845 F.2d 773 (8th Cir. 1988). There, the
defendant was accused of vicarious liability for manufacturing and
providing access to machines for duplicating cassettes, which some
customers used to infringe. *Id.* at 776-80. Though the rightsowners
gave the defendants "notice … of claimed … duplication on [the
defendants'] machines," the companies' counsel advised them—
ultimately incorrectly—that the companies were not secondary
infringers based on customer copying. *Id.* at 777. The court held that
because the companies did not "underst[and] their own actions to be
culpable" and "w[ere] not reckless" in adopting that view, their conduct
was not willful. *Id.* at 779.

Here, by contrast, this Court in *BMG* approved an instruction that
allowed the jury to find Cox willful and subject to increased statutory
damages based just on "knowledge that *its subscribers'* actions"—not its

14

own—"constituted infringement." 881 F.3d at 312-13 n.7 (emphasis added).[1] Under *BMG*, if Cox had knowledge that subscribers infringed, the jury could find it willful even if Cox had an entirely reasonable and good-faith belief that Cox's own action or inaction did not constitute contributory infringement. The panel, bound by *BMG*, was not able to address that definition—which conflicts directly with a ruling of the Eighth Circuit, as well as bedrock conceptions of willfulness this Court and the Supreme Court have recognized.

The consequence of *BMG*'s willfulness definition is to erase the difference between contributory infringement and willful infringement: Because contributory infringement already requires knowledge of subscriber infringement, this instruction automatically converts all contributory infringement into willful contributory infringement and subjects it to dramatically enhanced penalties. 17 U.S.C. § 504(c). That runs headlong into the Copyright Act's distinction between damages for non-willful versus willful infringement. There is a substantial likelihood that the Supreme Court grants review.

---

[1] Cox preserved its objection to *BMG*'s instruction at the panel stage, OB55 n.3, and in its petition for rehearing, Dkt. 95 at 15-19.

**B.    There is good cause to stay the mandate.**

There is also good cause to stay the mandate.  Good cause exists where there is a "likelihood of irreparable harm (assuming the correctness of the applicant's position) if the judgment is not stayed." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1302 (1991) (Scalia, J., in chambers); *see King*, 567 U.S. at 1302 (Roberts, C.J., in chambers).

If the mandate issues, and the district court elects to proceed with a retrial on damages, that retrial will be based on a finding that Cox has culpably and willfully contributed to infringement.  That will allow a jury to award up to $150,000 rather than $30,000 per work infringed merely because Cox provided internet access to known infringers, all while the Supreme Court reviews that unprecedented ruling.  While continued litigation burdens typically do not impose irreparable injury, *see Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974), courts have recognized the importance of "finally resolv[ing]" liability "in all respects," "*before* any steps are taken to remedy the violation." *Brooks v. City of Elkhart*, 239 F.3d 826, 829 (7th Cir. 2001) (Ripple, J., in chambers) (emphasis added).  That is because the legal and factual

16

bases for liability both form the foundation for and inform the appropriate remedy.

"[A]ssuming the correctness of … [Cox]'s position," *Barnes*, 501 U.S. at 1302 (Scalia, J., in chambers), Cox would be irreparably harmed if the damages litigation purports to assess statutory damages within a discretionary range that wrongly presupposes extreme culpability on Cox's part. Cox should not be forced to once again bear the extraordinary costs of the uncertainty and stigma of an unfounded damages award based on conduct now a decade old. And indeed, proceeding to a damages retrial makes no sense when liability is still unsettled in this Court.

Even if this were a "close case" for a stay, the "balance [of] equities" and "interests of the public at large" favor a stay. *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers); *see Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). While issuing the mandate could visit irreparable harm on Cox, Plaintiffs will suffer no hardship from the grant of a stay. The pending Rule 60(b) appeal requires this Court to stay the judgment until its resolution. And if the Supreme Court grants certiorari and reverses the contributory liability

judgment, both parties—and the court—would be spared the needless burden and expense of a damages retrial.  Meanwhile, no harm will come from preserving the status quo while Cox petitions for certiorari.

Lastly, the "practical consequences" of another verdict against Cox would be "great and affect the livelihood of thousands." *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 862 (4th Cir. 2002) (staying mandate).  Imposing damages on Cox for contributory liability would press it, and ISPs nationwide, to adopt a draconian notice-and-terminate regime, kicking untold numbers of people offline and off their remote desktops, doctors' appointments, and social networks in order to avoid billions in possible liability.  *Supra* 13. There is a public interest in permitting the Supreme Court to evaluate this Court's approach to ISP copyright liability before another trial.

## CONCLUSION

Cox respectfully requests that the Court stay its mandate pending disposition of No. 22-1451 before this Court and Cox's petition for a writ of certiorari.

Respectfully submitted,

*/s/ E. Joshua Rosenkranz*

Michael S. Elkin
Jennifer A. Golinveaux
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166

Mark S. Davies
ORRICK, HERRINGTON &
SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037

E. Joshua Rosenkranz
Christopher J. Cariello
Alexandra Bursak
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Counsel for Defendants-Appellants*

March 25, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because this brief contains 3,459 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ E. Joshua Rosenkranz*
E. Joshua Rosenkranz
*Counsel for Defendants-Appellants*